UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
BORIS SHAKHNES by his next friend ALLA
SHAKHNES, MIKHAIL FELDMAN, FEI MOCK
and SHA-SHA WILLIS, individually and on behalf
of all others similarly situated,

                        Plaintiffs,

        -against-

VERNA EGGLESTON, as Commissioner
of the New York City Human Resources
Administration, ROBERT DOAR, as
Commissioner of the New York State Office
of Temporary and Disability Assistance;
and ANTONIA C. NOVELLO, as
Commissioner of the New York State
Department of Health,

                       Defendants.
----------------------------------------------------------------x

**CLASS ACTION COMPLAINT**

06 Civ. _4778_

## PRELIMINARY STATEMENT

1.     Plaintiffs Boris Shakhnes by his next friend Alla Shakhnes, Mikhail Feldman, Fei

Mock and Sha-Sha Willis, bring this class action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367,

and 42 U.S.C. § 1983 for injunctive and declaratory relief, on behalf of themselves and a class of

New York City Medicaid funded home health services applicants and recipients who have

requested or will request fair hearings challenging denials, discontinuances and/or reductions of

such services who are being or will be improperly denied timely and adequate notice of denials,

discontinuance and/or reductions; and/or "aid-continuing" benefits pending Decisions After Fair

Hearings ("DAFHs"); and/or final administrative action within 90 days of their fair hearing

requests to which they are entitled under the law.

2.     Plaintiffs challenge the custom and practice of Defendant EGGLESTON (hereinafter "City Defendant" or "HRA") and Defendants DOAR and NOVELLO (hereinafter "State Defendants") (collectively hereinafter "Defendants") of (a) failing to take and/or ensure final administrative action within 90 days after requests for fair hearings on Medicaid home health cases, in violation of 42 U.S.C.§ 1396a(a)(3), 42 C.F.R. § 431.244(f)(1)(ii), 18 N.Y.C.R.R § 358-6.4(a), and the Due Process clauses of the 14th Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1, and of the New York State Constitution, N.Y. Const. art. I, § 6; (b) failing to provide timely and adequate notice of denials, reductions, or terminations of Medicaid home health services in violation of 42 U.S.C.§ 1396a(a)(3), 42 C.F.R. §§ 435.912, 435.919, 431.206(b), (c) and 431.210, New York Social Services Law § 22(12); 18 N.Y.C.R.R §§ 505.14(b)(3)(iv)(f)(2) and 358-3.3, and the Due Process clauses of the 14th Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1, and of the New York State Constitution, N.Y. Const. art. I, § 6; and (c) failing to provide required "aid-continuing" benefits pending the issuance of fair hearing decisions in violation of 42 U.S.C.§ 1396a(a)(3), 42 C.F.R. §§ 431.230(a), 431.231(c), 18 N.Y.C.R.R. § 358-3.6 and the Due Process clauses of the 14th Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1, and of the New York State Constitution, N.Y. Const. art. I, § 6.  Plaintiffs also challenge State Defendants' custom and practice of failing to properly oversee and supervise City Defendant's customs and practices concerning the provision of notice, aid-continuing and implementation of fair hearing decisions in Medicaid home health cases in violation of 42 U.S.C. § 1396a(a)(5), 42 C.F.R. §§ 431.10, 431.50, and 435.903, and N.Y. Soc. Serv. Law §§ 22, 363-a(1) and 364(2).

## JURISDICTION AND VENUE

3.      Jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331,

1343 and 1367.  Plaintiffs' claims for relief under federal law also arise under 42 U.S.C. § 1983,

as Defendants have acted under color of state law.

4.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C.

§ 1391(b) in that it is the judicial district in which a substantial part of the events giving rise to

the claims occurred.

## PARTIES

5.      Boris Shakhnes is a 56-year-old man who lives by himself at 2818 West 8th Street,

Brooklyn, New York.  Alla Shakhnes is his ex-wife, power of attorney and next friend.

6.      Mikhail Feldman is a 77-year-old man who lives by himself at 2785 Ocean

Parkway, Brooklyn, New York.  When Mr. Feldman became a naturalized citizen, he adopted

the more western spelling of his first name, and sometimes signs his first name as "Michael."

7.      Fei Mock is a 25-year-old woman who lives by herself at 332 East 29th Street

New York, New York.

8.      Sha-Sha Willis is a 34-year-old man who lives by himself at 177 Sands Street,

Brooklyn, New York.

9.      Defendant VERNA EGGLESTON is the Commissioner of the New York City

Human Resources Administration ("HRA") and as such is responsible for the overall operations

and decisions of that agency including the Home Care Service Program ("HCSP") and Adult

Protective Services ("APS").  She maintains an office at 180 Water Street, New York, New

York.

10.     Defendant ROBERT DOAR is the Commissioner of the New York State Office

of Temporary and Disability Assistance ("OTDA") and as such is responsible for the operations

of the Office of Fair Hearings, including but not limited to scheduling and conducting fair hearings, issuing recommended decisions after fair hearings, and ensuring compliance with fair hearing decisions involving the Medicaid program. He maintains an office at 14 Boerum Place, Brooklyn, New York.

11.     Defendant ANTONIA C. NOVELLO is the Commissioner of the New York State Department of Health ("DOH"), and as such is responsible for the administration of the Medicaid program in the State of New York. She maintains an office at Corning Tower, Empire State Plaza, Albany, New York.

## CLASS ACTION ALLEGATIONS

12.     Named Plaintiffs Boris Shakhnes by his next friend Alla Shakhnes, Mikhail Feldman, Fei Mock and Sha-Sha Willis bring this action, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and as representatives of a class of:

> All New York City applicants for, and recipients of, Medicaid funded home health services, who have requested or will request fair hearings challenging denials, reductions, or terminations of their home health services and who (1) do not receive final administrative action from Defendants within ninety days of their requests for fair hearings; and/or (2) do not receive timely and adequate notice of denials, reductions, or terminations of their home health services; and/or (3) do not receive aid-continuing when they meet all the requirements for it.

13.     The class is so numerous that joinder of all class members in this action would be impracticable. Upon information and belief, there are hundreds of persons in the class.

14.     Moreover, it would be impracticable for potential plaintiffs, who are, by definition, disabled and indigent individuals, to obtain legal services on an individual basis for their claims. Hence their rights under the law may well be meaningless without certification of a class action seeking common redress.

4

15. Questions of law and fact common to the class predominate over any individual questions, namely whether Defendants' custom and practice of failing to provide, and/or ensure the provision of, final administrative action within the 90-day time frame required by law to home health services applicants and recipients who request fair hearings violates applicable federal and state statutes and regulations, and the Constitutions of the United States and the State of New York; whether Defendants' custom and practice of failing to provide, and/or ensure the provision of, timely and adequate notice of denials, reductions, or terminations of home health services violates applicable federal and state statutes and regulations, and the Constitutions of the United States and the State of New York; and whether Defendants' custom and practice of failing to provide, and/or ensure the provision of, aid-continuing to eligible home health services recipients violates applicable federal and state laws and regulations and the Constitutions of the United States and the State of New York.

16. All Named Plaintiffs' claims are typical of the claims of the class in that all have requested fair hearings but have not received final administrative action within 90 days.

17. Named Plaintiff Sha-Sha Willis's claims are typical of the claims of the class in that he did not receive timely and adequate notice of the termination of his home health services, did not receive aid-continuing to which he was and is entitled, and did not receive final administrative action within 90 days of his fair hearing request.

18. Named Plaintiffs will adequately represent the interests of the class. Named Plaintiffs are members of the proposed class and there are no conflicts of interest between Named Plaintiffs and other proposed class members in that all proposed class members would benefit by obtaining timely final administrative action; and/or timely and adequate notice of

home health service denials, reductions or terminations; and/or aid-continuing pending the issuance of fair hearing decisions.

19.     Plaintiffs are represented by the New York Legal Assistance Group ("NYLAG") and by Sonnenschein Nath & Rosenthal, LLP.  Both firms are experienced in class action litigation and attorneys at NYLAG are experienced in class action litigation concerning Medicaid, including the Medicaid home health services program.

20.     A class action is the superior method for a fair and efficient adjudication of this matter in that Defendants have acted in a manner generally applicable to the class and a class action will avoid numerous separate actions by class members that would unduly burden the courts and create the possibility of inconsistent decisions, thereby making final injunctive and declaratory relief appropriate as to the class as a whole.

## STATUTORY AND REGULATORY SCHEME

### A.    *Framework of the Medicaid Program*

21.     The Medical Assistance Program ("Medicaid") is a joint federal-state program established under Title XIX of the Social Security Act (the "Medicaid Act") that provides federal funding for state programs that furnish medical assistance and rehabilitation and other services to needy individuals.  42 U.S.C. § 1396 et seq.; 42 C.F.R. § 430 et. seq.

22.     States do not have to participate in the Medicaid program, but if they do, they must conform to federal law and regulations in order to qualify for federal financial participation. 42 U.S.C. §§ 1396, 1396a, 1396c.

23.     Any state participating in the Medicaid program must adopt an approved State plan, and must administer the program through a "single state agency."  42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10(b)(1).  New York has elected to participate in the Medicaid program, and the

"single state agency" responsible for the administration of the Medicaid program in New York is the New York State Department of Health.  N.Y. Soc. Serv. Law § 363-a(1).

24.     Effective October 1, 1996, DOH assumed the responsibility, formerly held by the New York Department of Social Services ("NYDSS"), for administration of New York's Medicaid program.  All regulations of NYDSS with respect to the Medicaid program continued, in full force and effect, as regulations of DOH.  N.Y. Soc. Serv. Law § 363-a(1); 1996 N.Y. Session Law, c. 474, § 242.

25.     DOH is authorized to delegate and has delegated certain responsibilities for administering the Medicaid program to local districts.  42 U.S.C. § 1396a(a)(1); N.Y. Soc. Serv. Law § 365(1).

26.     HRA is the local social services provider for the district of New York City, and is responsible for the day-to-day operations of certain aspects of the Medicaid program, pursuant to a local plan developed and maintained by HRA under the guidance of DOH.  N.Y. Soc. Serv. Law § 61; 18 N.Y.C.R.R. § 501.1.  With respect to the administration of the Medicaid program, HRA acts as the agent of DOH.

27.     Notwithstanding any delegation of authority to the local districts, DOH, as the "single state agency," remains ultimately responsible to supervise the actions of its agents, including HRA, and to ensure that its agents comply with the federal and state statutes and regulations governing the Medicaid program.  42 U.S.C. § 1396a(a)(5); 42 C.F.R. §§ 431.10, 431.50, 435.903; N.Y. Soc. Serv. Law §§ 22, 363-a(1), 364(2).

28.     Furthermore, DOH may not delegate to HRA, or any other agent, authority to exercise administrative discretion in the administration or supervision of the State plan, or issue policies, rules, and regulations on program matters.  42 C.F.R. § 431.10(e)(1).

29.     Among other remedies, DOH has the authority to withhold or deny reimbursement to HRA in the event of HRA's failure to comply with the Medicaid program's rules and regulations.  N.Y. Soc. Serv. Law § 20(3)(e).

**B.      *Fair Hearing Process and Requirements***

30.     Federal law and regulations require a state's Medicaid program to provide Medicaid applicants and recipients with recourse to an administrative fair hearing when Medicaid benefits are denied, reduced, or terminated.  42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.220.

31.     When determinations are made to deny, reduce, or terminate Medicaid, applicants and recipients must be given timely and adequate notice of their right to a fair hearing.  42 U.S.C.§ 1396a(a)(3); 42 C.F.R. §§ 435.919, 435.912, 431.206(b), 431.206(c), 431.210; N.Y. Soc. Serv. Law § 22(12); 18 N.Y.C.R.R § 505.14(b)(3)(iv)(f)(2).

32.     When determinations are made to reduce or terminate Medicaid benefits, recipients who request a fair hearing in a timely manner are entitled to receive their benefits unchanged (called "aid-continuing") until a Decision After Fair Hearing ("DAFH") is issued.  42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.230(a), 431.231(c); 18 N.Y.C.R.R. §§ 358-3.6, 505.23(13)(i)(d); U.S. Const. Amend. XIV, § 1; N.Y. Const. Art. I, § 6.

33.     "Final administrative action" must be taken within 90 days from the date a fair hearing is requested.  42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.244(f); 18 N.Y.C.R.R. § 358-6.4(a).

34.     To provide "final administrative action," the state must schedule a fair hearing, hold the fair hearing, render a Decision After Fair Hearing, and take action implementing the decision.

35.     Although DOH retains ultimate responsibility for making final administrative determinations regarding individual fair hearings, the hearings themselves are scheduled and conducted by hearing officers employed by OTDA who issue recommended decisions to the Commissioner of DOH pertaining to the individual fair hearings.  N.Y. Session Law 1996, c. 474 § 364.

36.     Local districts must comply with State fair hearing decisions.  42 C.F.R. § 431.10(e)(3); 18 N.Y.C.R.R. § 358-6.4(c).

37.     New York regulations require that "upon receipt of a complaint that a social services agency has not complied with the fair hearing decision, the commissioner will secure compliance by whatever means is deemed necessary and appropriate under the circumstances of the case."  18 N.Y.C.R.R. § 358-6.4.

C.      *Home Health Services Under Medicaid*

38.     Under the Medicaid Act, states must provide home health services, at a minimum, to any individual who, under the State plan, is entitled to nursing facility services.  42 U.S.C. § 1396a(a)(10)(D).

39.     In New York City, home health services are provided through a variety of different programs which provide different levels and types of services to individual Medicaid recipients based on their particular medical needs.

40.     Most "personal care services" are provided through the Home Care Services Program ("HCSP") and some are provided by Adult Protective Services ("APS").  Both programs are administered by HRA.  N.Y. Soc. Serv. Law § 62; 18 N.Y.C.R.R. § 505.14.

41.     Personal care services generally include "hands on" assistance provided to a patient at his/her home, including but not limited to "some or total assistance with personal

9

hygiene, dressing and feeding, nutritional and environmental support functions, and health-related tasks," and other activities that require only minimal medical skill.  18 N.Y.C.R.R. § 505.14(a)(1).

42.     Under 18 N.Y.C.R.R. § 505.14(a)(3), a Medicaid eligible individual who, because of his or her medical condition or disability "requires total assistance with toileting and/or walking and/or transferring and/or feeding at unscheduled times during the day and night" is entitled to receive continuous 24-hour personal care services, provided by more than one person. 18 N.Y.C.R.R. § 505.14(a)(3).

43.     HRA contracts with private vendors to supply personal care services to eligible individuals.  N.Y. Soc. Serv. Law § 367-p.

44.     DOH – and HRA, as DOH's delegate – retains the power and responsibility to ensure and enforce vendors' compliance with its rules, regulations and official directives.  18 N.Y.C.R.R. § 504.3.

45.     Although the majority of home health care recipients in New York City can be, and are, serviced by HRA through HCSP, many other home health service recipients require a higher, more skilled, level of care than may be provided by HCSP.  Most of these individual recipients receive their care from Certified Home Health Agencies ("CHHAs"), which are privately-owned vendors under contract with DOH.  10 N.Y.C.R.R. § 763.11(a)(7).

46.     CHHA services generally comprise assistance with tasks requiring some medical skill, such as "nursing services, physical therapy and home health aide services."  18 N.Y.C.R.R. § 505.23(a)(3)(i).

47.     Although CHHAs do not contract with HRA directly, HRA acts as the agent of DOH for the purpose of ensuring that CHHAs do not improperly deny or terminate the services

of eligible recipients, and CHHAs must notify HRA when making such determinations.  18

N.Y.C.R.R. § 505.23(f) ("Revised Catanzano Implementation Plan").

48.     When a CHHA determines to deny home health services to a new applicant the

CHHA must notify HRA of its decision.  18 N.Y.C.R.R. § 505.23(f) I. § 1.0 A. § 100.

49.     When HRA receives notice from a CHHA that the CHHA has determined to deny

services, HRA must evaluate whether the CHHA's determination to deny was correct.  18

N.Y.C.R.R. § 505.23(f) I. § 1.0 A. § 102.

50.     If HRA determines that the CHHA determination to deny services is correct, then

HRA must notify the applicant by timely and adequate notice. 18 N.Y.C.R.R. § 505.23(f) I. § 1.0

A. § 103(a).

51.     If HRA determines that the CHHA determination to deny is incorrect, then HRA

must either find another CHHA that is willing to provide services, or direct a CHHA to provide

services.  18 N.Y.C.R.R. § 505.23(f) I. § 1.0 A. § 103(b).

52.     When a CHHA decides to terminate the services of a current recipient of CHHA

services, contrary to the orders of the recipient's treating physician, the CHHA must either refer

the case to another CHHA that is willing to continue services or notify HRA that it wishes to

terminate the recipient's services.  18 N.Y.C.R.R. § 505.23(f) I. § 1.0 B. § 202.

53.     When HRA receives notice from a CHHA that the CHHA has decided to

terminate services, HRA must evaluate whether the CHHA's decision to terminate is correct.  18

N.Y.C.R.R. § 505.23(f) I. § 1.0 B. § 203.

54.     If HRA determines that the CHHA decision to terminate services is correct, then

HRA must notify the applicant by a timely and adequate notice.  18 N.Y.C.R.R. § 505.23(f) I.

§ 1.0 B. § 204(a).  If the recipient requests a fair hearing prior to the effective date of the notice,

the CHHA must provide aid-continuing until a DAFH is issued.  18 N.Y.C.R.R. § 505.23(f) I.
§ 1.0 B. § 205.

55.      If HRA determines that the CHHA decision to terminate is incorrect, then HRA
must direct the CHHA to provide the services in accordance with the physician's order.  18
N.Y.C.R.R. § 505.23(f) I. § 1.0 B. § 204(b).

## FACTS OF THE INDIVIDUAL NAMED PLAINTIFFS

### A.    *Boris Shakhnes*

56.      Boris Shakhnes is a Medicaid recipient who currently receives home health
services through HCSP.

57.      Mr. Shakhnes was diagnosed with Multiple Sclerosis over ten years ago.  His
disease is incurable and worsening over time.

58.      As a result of his medical condition, Mr. Shakhnes now requires total assistance
with all of his activities of daily living.  He is incapable of doing anything independently.

59.      Currently Mr. Shakhnes is cared for by a Medicaid home attendant who is paid to
care for him 24 hours per day on a "sleep in" basis.

60.      While the aide is able to satisfy Mr. Shakhnes's daytime needs, she is unable to
satisfy his nighttime needs because she needs to sleep.  When she tries to care for him at night,
she becomes so tired that she cannot care for him adequately during the day.

61.      Mr. Shakhnes has many nighttime needs.  He must be turned every two hours to
prevent bedsores.  He requires frequent oral hydration to prevent urinary tract infections.  In
addition, due to his incontinence, Mr. Shakhnes needs to be changed frequently to prevent skin
breakdown.

62.     Because of Mr. Shakhnes's many nighttime needs, his physician determined that it is medically necessary that Mr. Shakhnes receive home health services in two 12-hour shifts in order to maintain his heath and safety in the community and on October 2, 2005, the physician submitted a Medical Request for Home Care form to HCSP requesting these split-shift services.

63.     On October 24, 2005, a notice was sent to Mr. Shakhnes that denied the increase, stating merely that "the current service plan is sufficient to maintain your health and safety in the home."

64.     On October 31, 2005, Mr. Shakhnes requested a fair hearing to challenge the denial of the request for additional services.

65.     During the past year, Mr. Shakhnes has suffered serious bedsores on his body for approximately seven months, causing him severe pain, and posing a serious threat to his health and safety.

66.     Until Mr. Shakhnes receives the nighttime care that he needs, he is at high risk of developing bedsores again.

67.     As of June 20, 2006, 233 days after Mr. Shakhnes requested a fair hearing, no fair hearing has been scheduled.

**B.     Mikhail Feldman**

68.     Mikhail Feldman suffers from diabetes, hypertension, and arthritis.  He also experiences dizziness, which makes it difficult for him to go outside alone.  The closest store is too far from his home for him to reach it safely alone and he has trouble carrying home groceries.

69.     Because Mr. Feldman is diabetic he must maintain a strict diabetic diet.

13

70.     Mr. Feldman needs a home attendant to help him buy groceries and to prepare diabetes-appropriate home cooked meals.

71.     Mr. Feldman has two inguinal hernias and an umbilical hernia, all of which cause him intermittent pain.  His doctor has told him that he needs to have these hernias repaired because they can become strangulated and cause a life-threatening medical emergency.

72.     Mr. Feldman has not scheduled these surgeries because, without home care, he will have to come home alone with no one to help him while he recovers.  The hospital does not have to arrange home care for him because he will not have to be admitted overnight for the surgeries he needs.

73.     Mr. Feldman has cataracts in both eyes and needs to have them removed, but he is afraid to have these procedures for the same reasons.  Yet without the surgeries it is getting increasingly difficult for him to see at all.

74.     Mr. Feldman first applied for home care in July of 2004.  At that time his physician sent a Medical Request for Home Care form to HCSP.

75.      On July 30, 2004, Mr. Feldman received a notice of denial of home care services on the basis that he did not have any unmet service needs.

76.     Because his physician and Mr. Feldman both believe that he does have unmet service needs, Mr. Feldman requested a fair hearing on September 1, 2004 to challenge the denial of home health services.

77.     In addition to requesting a fair hearing, in October of 2004 Mr. Feldman submitted a second Medical Request for Home Care form with additional documentation of his medical condition.

78.    That request was denied on October 27, 2004 and, on December 1, 2004, Mr. Feldman requested another fair hearing in order to challenge the second denial of home care benefits.

79.    Mr. Feldman's fair hearing concerning the July 2004 denial was scheduled for August 24, 2005.  That hearing was adjourned because Mr. Feldman was seeking representation.

80.    A fair hearing concerning both denials was rescheduled for October 13, 2005.  It was adjourned because Mr. Feldman's attorney was not available.

81.    Since then, Mr. Feldman has called OTDA multiple times to request that his fair hearing be rescheduled.

82.    As of June 20, 2006, 300 days after his first fair hearing was adjourned, neither of Mr. Feldman's fair hearings has been rescheduled.

**D.    *Fei Mock***

83.    As a child, Fei Mock contracted poliomyelitis and as a result she now suffers from severe scoliosis, which causes her to be in constant pain and drastically reduces her mobility.

84.    As a result of Ms. Mock's scoliosis, she is unable to walk or stand on her own and must use a wheelchair.  She has some use of her arms, but is unable to perform many necessary activities of daily living and is unable to transfer independently.

85.    Ms. Mock needs assistance to cook, clean, eat, transfer in and out of bed, transfer in and out of her wheelchair, transfer in the bathroom, and to clean, groom and dress herself.

86.    Ms. Mock receives Medicaid-funded home health services from HCSP.

87.    Currently Medicaid pays for Ms. Mock to receive a home attendant 24 hours per day on a "sleep in" basis.

15

88.     Having only a "sleep in" aide causes significant problems for Ms. Mock because she needs more assistance at night when the home attendant must sleep.  She needs to be turned every hour to prevent bedsores.  If she is not repositioned frequently she suffers extreme, often excruciating, pain due to her scoliosis.  She also needs to go to the bathroom frequently, which requires her home attendant to transfer her to her wheelchair, take her to the bathroom, and then return her to bed.

89.     Because of Ms. Mock's nighttime needs, her physician determined that it is medically necessary that she receive home health services in two 12-hour shifts in order to preserve her health and safety in the community and in September 2005 the physician submitted a Medical Request for Home Care form to HCSP requesting such services.

90.     On December 2, 2005, Ms. Mock received a notice stating that her physician's request for additional hours was being denied.

91.     Ms. Mock requested a fair hearing on December 8, 2005, in order to challenge HRA's determination.

92.     As of June 20, 2006, 194 days since her fair hearing request, Ms. Mock's fair hearing has not yet been scheduled.

**E.      *Sha-Sha Willis***

93.     Sha-Sha Willis has been a quadriplegic since 1993.

94.     Although Mr. Willis can live at home safely with assistance, he needs help with all of his activities of daily living.  Because of his quadriplegia, he requires assistance with all transferring, mobility, dressing, bathing, toileting, cooking, cleaning and all other household chores.

95. Mr. Willis is a recipient of Medicaid benefits through the New York State Medical Assistance Program.

96. Prior to February 14, 2004, Mr. Willis received 24-hour continuous split-shift home health services paid for by Medicaid and provided by Visiting Nurse Services of New York ("VNS"), a certified home health agency that contracts directly with DOH.

97. On February 14, 2004, a representative from VNS, several people from APS, and two police officers arrived at Mr. Willis's apartment and brought him to Brooklyn Hospital against his will. They informed Mr. Willis that his home health services were being terminated and that he was being brought to the hospital because he was unable to care for himself.

98. Later that day Mr. Willis was released from the hospital and picked up by his mother who brought him home. Since then Mr. Willis has been cared for by his mother and friends.

99. Mr. Willis was never given a notice of termination, nor was he ever informed of his right to a fair hearing and aid-continuing.

100. In November of 2005 Mr. Willis contacted the New York Legal Assistance Group.

101. On January 3, 2006 NYLAG, on behalf of Mr. Willis, requested a fair hearing to challenge the termination of his home health services.

102. As of June 21, 2006, 169 days since the fair hearing request, no fair hearing has been scheduled and Mr. Willis has not received aid-continuing.

## FACTS CONCERNING THE CLASS

103. Medicaid-funded home health services enable people who need assistance with the activities of daily living – who, for example, cannot perform essential life activities such as bathing or eating on their own – to receive care from a home attendant, home health aide, or

17

visiting nurse while remaining safely in their own homes, rather than having to permanently reside in a Medicaid nursing home or other institution.

104.    Currently, more than 62,000 New York City residents receive home health services through the Medicaid program, in the form of either (or both) personal care services or home health care services.

105.    Defendants, separately and together, have a custom and practice of routinely failing to take one or more – and sometimes all – of the steps required by law and regulation when denying requests for home care services or increases, when threatening reductions or terminations of such services, and in the administration of the fair hearings challenging such determinations.

106.    Defendant Eggleston has a custom and practice of routinely failing to provide timely and adequate notice of denials, reductions or terminations of home health services.  State Defendants have a custom and practice of routinely failing to supervise Defendant Eggleston to ensure that she provides timely and adequate notice of denials, reductions, or terminations of home health services.

107.    Defendants, separately and together, have a custom and practice of allowing CHHAs to illegally terminate or deny home health services to eligible individuals.

108.    Defendants, separately and together, have a custom and practice of failing to provide, and failing to ensure the provision of, aid-continuing to those home health care recipients who timely request fair hearings to challenge reductions or terminations.

109.    Defendant Eggelston has a custom and practice of refusing to comply with aid continuing directives issued by State Defendants.

110.    Defendants, separately and together, have a custom and practice of routinely failing to provide final administrative action within 90 days of applicants' and recipients' requests for fair hearings, leaving vulnerable, needy Medicaid home health services-eligible individuals without care for weeks, months and even years longer than is permissible under the law.

111.    Defendant Doar has a custom and practice of failing to timely schedule fair hearings.  Defendant Novello has a custom and practice of failing to ensure that Defendant Doar schedules fair hearings promptly.

112.    When CHHAs illegally terminate recipients' services, State Defendants have a custom and practice of issuing Aid-Continuing Orders and DAFHs which run against Defendant Eggelston even though Defendant Eggelston does not contract with CHHAs.  This routinely results in compliance problems because Defendant Eggleston takes the position that she does not have any control over CHHAs.

113.    Defendant Eggelston routinely fails to follow the regulations pertaining to CHHAs codified in the Catanzano Implementation Plan.

114.    Although responsibility for providing home health services to New York City residents is divided between Defendants Eggleston and Novello, all of the services are in practice out-sourced to private home care vendors which actually provide the services.  Defendant Eggelston contracts with the vendors that provide personal care services; Defendant Novello with the vendors that provide CHHA services.

115.    Defendants, separately and together, routinely fail to exercise their authority to ensure that vendors under contract with them actually provide home health services to individuals entitled to the services.

116.    Other recipients of Medicaid-funded home health services known to Plaintiffs' attorneys have also received no notices of termination and no aid-continuing and have suffered equally long delays in obtaining final administrative action at every stage, including scheduling of their fair hearings, receiving decisions after their fair hearings, and in obtaining compliance with those fair hearing decisions. See Declaration of Jane Greengold Stevens, dated June 19, 2006 ("Stevens Decl."), Exs. J - O.

117.    This is not the first time Defendants have been before this Court for their routine failure to take final administrative action in a timely manner on Medicaid cases. In 1989, this Court certified a class of "all New York City applicants for or recipients of Medicaid who receive Decisions After Fair Hearings from the New York State Department of Social Services but do not obtain final administrative action in a timely manner." See Cutler v. Perales, 128 F.R.D. 39 (S.D.N.Y. 1989) (J. Leisure). The parties ultimately entered into a Court-approved settlement agreement that, *inter alia*, established monitoring for 18 months. Cutler v. Bane, No. 88Civ8615, 1993 WL 267294 (S.D.N.Y. July 12, 1993).

118.    Now, more than 10 years later, Defendants have again engaged in the customs and practices challenged in that case, with severe consequences for New York's Medicaid-eligible population.

## FIRST CAUSE OF ACTION

119.    Defendants' custom and practice of failing to take and/or ensure final administrative action within 90 days from the date class members request fair hearings challenging the denial, discontinuance and/or reduction of Medicaid home health services violates Plaintiffs' rights under 42 U.S.C.§ 1396a(a)(3), 42 C.F.R. § 431.244(f)(1)(ii), 18 N.Y.C.R.R § 358-6.4(a), and the Due Process clauses of the 14th Amendment to the United

20

States Constitution, U.S. Const. Amend. XIV, § 1, and of the New York State Constitution, N.Y. Const. Art. I, § 6.

## SECOND CAUSE OF ACTION

120.    Defendants' custom and practice of failing to provide, and/or ensure the provision of, timely and adequate notice of denials, reductions, or terminations of home health services violates Plaintiffs' rights under 42 U.S.C.§ 1396a(a)(3), 42 C.F.R. §§ 435.912, 435.919, 431.206(b),(c) and 431.210, New York Social Services Law § 22(12), 18 N.Y.C.R.R §§ 505.14(b)(3)(iv)(f)(2) and 358-3.3, and the Due Process clauses of the 14th Amendment to the United States Constitution, U.S. Const. Amend. XIV, § 1, and of the New York State Constitution, N.Y. Const. Art. I, § 6.

## THIRD CAUSE OF ACTION

121.    Defendants' custom and practice of failing to provide, and/or ensure the provision of, home health services pending Decisions After Fair Hearings to recipients who make timely requests for hearings and for aid-continuing violates Plaintiffs' rights under 42 U.S.C. § 1396a(a)(3), 42 C.F.R. §§ 431.230(a), 431.231(c), New York Social Services Law § 22(12), 18 N.Y.C.R.R § 358-3.6, and the Due Process clauses of the 14th Amendment to the United States Constitution and of the New York State Constitution.

## FOURTH CAUSE OF ACTION

122.    State Defendants' custom and practice of failing to properly oversee and supervise City Defendant's customs and practices concerning the provision of notice, aid-continuing and implementation of fair hearing decisions in Medicaid home health cases violates 42 U.S.C. § 1396a(a)(5), 42 C.F.R. §§ 431.10, 431.50, 435.903; and New York Social Services Law §§ 22, 363-a(1) and 364(2).

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment:

I.     Granting a temporary restraining order or preliminary injunction directing:

(a) Defendants, within three (3) working days of the date appearing on the Order, to restore to Named Plaintiff WILLIS continuous home health services in the amount of two 12-hour shifts per day, to continue until he receives a decision on his pending fair hearing request;

(b) Defendants, within seven (7) working days of the date appearing on the Order, to hold fair hearings and issue DAFHs for Named Plaintiffs SHAKHNES, MOCK, and FELDMAN; and implement those DAFHs within three (3) working days thereafter;

(c) In the alternative to the relief set out in I.(b), Defendants, within seven (7) working days of the date appearing on the Order, to provide relief in the form of home health services in the amount and at the level requested by their physicians, pending DAFHs in their cases, for Named Plaintiffs SHAKHNES, MOCK, and FELDMAN;

II.    Grant a preliminary injunction directing:

(a) State Defendants, within ten (10) working days of the date appearing on the Order, to identify all current members of the proposed class for whom State Defendants have directed aid-continuing pending DAFHs and who are not receiving aid-continuing; and

(b) all Defendants, collectively, within three (3) working days of the completion of the identification required in paragraph II.(a), to provide aid-continuing to

all proposed class members identified pursuant to paragraph II.(a), pending

their receipt of DAFHs;

III.   Certifying, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, a

plaintiff class defined as:

> All New York City applicants for, and recipients of, Medicaid
> funded home health services, who have requested or will
> request fair hearings challenging denials, reductions, or
> terminations of their home health services and who (1) do not
> receive final administrative action from Defendants within
> ninety days of their requests for fair hearings; and/or (2) do not
> receive timely and adequate notice of denials, reductions, or
> terminations of their home health services; and/or (3) do not
> receive aid-continuing when they meet all the requirements for
> it;

IV.   Declaring that:

a.   Defendants' custom and practice of failing to take and/or ensure final

administrative action within 90 days from the date class members request fair

hearings challenging the denial, discontinuance and/or reduction of Medicaid

home health services violates Plaintiffs' rights under 42 U.S.C. § 1396a(a)(3),

42 C.F.R. § 431.244(f)(1)(ii), 18 N.Y.C.R.R § 358-6.4(a), and the Due

Process clauses of the 14th Amendment to the United States Constitution,

U.S. Const. Amend. XIV, § 1, and of the New York State Constitution, N.Y.

Const. Art. I, § 6;

b.   Defendants' custom and practice of failing to provide and/or to ensure the

provision of timely and adequate notice of denials, reductions, or terminations

of home health services violates Plaintiffs' rights under 42 U.S.C.

§ 1396a(a)(3), 42 C.F.R. §§ 435.919, 435.912, 431.206(b), 431.206(c) and

431.210, New York Social Services Law § 22(12), 18 N.Y.C.R.R

§§ 505.14(b)(3)(iv)(f)(2) and 358-3.3, and the Due Process clauses of the 14th

Amendment to the United States Constitution, U.S. Const. Amend. XIV, § 1,

and of the New York State Constitution, N.Y. Const. Art. I, § 6;

c.   Defendants' custom and practice of failing to provide and/or ensure the

provision of home health services pending Decisions After Fair Hearings

when recipients make timely requests for hearings and for aid-continuing

violates Plaintiffs' rights under 42 U.S.C.§ 1396a(a)(3), 42 C.F.R.

§§ 431.230(a), 431.231(c), New York Social Services Law § 22(12), 18

N.Y.C.R.R § 358-3.6, and the Due Process clauses of the 14th Amendment to

the United States Constitution, U.S. Const. Amend. XIV, § 1, and of the New

York State Constitution, N.Y. Const. Art. I § 6;

d.   State Defendants' custom and practice of failing to properly oversee and

supervise City Defendant's customs and practices concerning the provision of

notice, aid-continuing and implementation of fair hearing decisions in

Medicaid home health cases violates 42 U.S.C. § 1396a(a)(5), 42 C.F.R.

§§ 431.10, 431.50, 435.903; and New York Social Services Law §§ 22, 363-

a(1) and 364(2);

V.   Enjoining:

a.   All Defendants, separately and together, to adopt and implement policies and

procedures so as to take and/or ensure final administrative action, including

scheduling and holding hearings, issuing Decisions After Fair Hearings, and

implementing those decisions, within 90 days from the date class members

24

request fair hearings challenging the denial, discontinuance and/or reduction of Medicaid home health services;

b. Defendant Eggleston to provide, and State Defendants to ensure the provision of, timely and adequate notice of denials, reductions, or terminations of home health services to all proposed class members;

c. All Defendants, separately and together, to adopt and implement policies and procedures so as to provide, and/or ensure the provision of, aid-continuing pending Decisions After Fair Hearings when home health services recipients make timely requests for hearings and for aid-continuing;

d. State Defendants to supervise HRA and ensure HRA's compliance with the State of New York's plan implementing the Medicaid program and the statutes and regulations governing home health services;

VI.    Awarding reasonable attorneys' fees, as provided by 42 U.S.C. § 1988;

VII.   Awarding costs and disbursements; and

VIII.  Granting such other and further relief as the Court deems equitable and just.

Dated:     New York, New York
           June 20, 2006

YISROEL SCHULMAN, ESQ
New York Legal Assistance Group
Jane Greengold Stevens, of counsel (JS 4790)
Caroline Hickey, of counsel (CH1410)
Benjamin Taylor, on the brief
Amy E. Lowenstein, on the brief
450 West 33rd St., 11th Floor
New York, NY 10001
212-613-5000, 5031, 5077
Facsimile:   212-750-0820

SONNENSCHEIN NATH & ROSENTHAL LLP
Sandra D. Hauser (SH 3283)
Christine Lepera (CL 9311)
Michael S. Gugig (MSG 6000)
Joshua S. Akbar (JA 3589)
Robert Gifford (RWG 9825)
Eva Lopez-Paredes (ELP 5476)
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, NY 10020
Ph.: (212) 768-6700

*Attorneys for Plaintiffs*

9968377\V-3