UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                  :

BORIS SHAKHNES by his next friend ALLA     :
SHAKHMAN, MIKHAIL FELDMAN, FEI MOCK, :
CHAIO ZHANG, and MAYRA VALLE by her   :
next friend, SHIRLEY CAMPOS-VALLE,      :
individually and on behalf of all others similarly :
situated,                                   :
                                                 :     06 Civ. 04778 (RJH)
                    Plaintiffs,         :
                                                   :    **MEMORANDUM OPINION**
       -against-               :        **AND ORDER**
                                                   :
VERNA EGGLESTON, as Commissioner of the  :
New York City Human Resources Administration, :
ROBERT DOAR, as Commissioner of the New  :
York State Office of Temporary and Disability  :
Assistance; and ANTONIA C. NOVELLO, as    :
Commissioner of the New York State Department :
of Health,                                :
                                                 :
                  Defendants.       :
-----------------------------------------------------------------x
-----------------------------------------------------------------x
                                                 :

MARIE MENKING, by her attorney-in-fact    :
William Menking, on behalf of herself and all   :
others similarly situated,               :
                                                 :     09 Civ. 4103 (RJH)
                   Plaintiff,        :
        -against-              :
                                                 :
RICHARD F. DAINES, M.D., in his official   :
CapaCity as Commissioner, New York State   :
Department of Health, and DAVID A. HANSELL, :
in his official capaCity as Commissioner, New York:
State Office of Temporary and Disability Assistance:
                                                 :
                  Defendants.       :
-----------------------------------------------------------------x

Richard J. Holwell, District Judge:

      This opinion disposes of five motions filed in two related actions.  Plaintiffs in

both *Shakhnes v. Eggleston*, No. 06 Civ. 04778 ("*Shakhnes*") and *Menking v. Daines*,

No. 09 Civ. 04103 ("Menking") allege procedural deficiencies in the processing of Medicaid appeals by the New York agencies responsible for Medicaid administration.  In both, the plaintiffs assert that the agencies are legally obligated to resolve appeals from adverse determinations within ninety days after those appeals are made, and in both, the plaintiffs contend that the agencies systematically fail to meet that ninety-day deadline. The agency defendants in both actions have moved to dismiss the plaintiffs' claims, primarily on the grounds that there is no cause of action for the alleged deficiencies in Medicaid Fair Hearing procedures. (06-cv-04778 [84]; 09-cv-04103 [12].)  The Court consolidates the actions solely for the purposes of this opinion because both motions are largely disposed of by the Court's holding, set forth below, that there is a cause of action under 42 U.S.C. § 1983 for failure to resolve Medicaid appeals within ninety-days after they are filed.  Fed. R. Civ. P. 42(a)(3).

The principal differences between the Shakhnes and Menking cases are their procedural posture, the scope of their claims, and the breadth of the classes that they wish to certify.  Shakhnes, filed in 2006, has completed discovery and has (in addition to the motion to dismiss), a pending motion for class certification and pending cross-motions for summary judgment.  (06-cv-04778 [86], [88], [93].)  The Shakhnes complaint asserts causes of action for ninety-day violations as well as failures to provide either adequate notice of the right to appeal or temporary interim services pending a decision by the fair hearing officer.  Moreover the putative Shakhnes class includes only a subset of Medicaid recipients—those who request home health services and who are not challenging decisions merely relating to their financial eligibility for Medicaid.  On the other hand Menking, filed in 2009, is only at the motion to dismiss stage, states claims only for

ninety-day violations (that is, excluding claims for inadequate notice and failure to provide interim services), and seeks to represent a class including all types of Medicaid recipients, home health service and otherwise.

For the reasons that follow the motion to dismiss in Menking is denied in its entirety, and the motion to dismiss in Shakhnes is denied in part and granted in part. Additionally as to the Shakhnes action: (1) plaintiff's motion for class certification is granted and a class is certified pursuant to Federal Rule of Civil Procedure 23(b)(2); (2) plaintiffs' motion for partial summary judgment is granted in part; and (3) the New York City Human Resources Administration's motion for summary judgment is denied.

## I.   BACKGROUND

The following undisputed facts are provided for background purposes only. Because this opinion addresses several motions carrying different standards of factual review, the Court addresses material disputes and their relevant review standards as necessary in the body of the opinion.

### A.   Medicaid Fair Hearings

Medicaid is a joint federal-state program, established under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq*., which supplies federal funding for State programs that provide medical assistance to certain qualified individuals.  States are not required to participate in the program, but if they elect to participate they must comply with federal law and regulations in order to remain qualified for federal financial support under the program.  *Id.*  Among other things a participating state must adopt an approved

State plan that meets certain statutory and regulatory requirements, and must administer its program through a "single State agency."  In New York, that single State agency is the New York State Department of Health ("DOH"), a defendant in both actions.  N.Y. Soc. Serv. Law § 363-a(1).

As occurs in any social service system, there are times when the Medicaid administrating agency issues a decision adverse to the interests of a particular participant. The Medicaid system permits the appeal of those decisions: the statute States that "[a] State plan for medical assistance must provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness."  42 U.S.C. § 1396a(a)(3).  Although as the "single State agency" responsible for Medicaid administration the DOH has ultimate responsibility with respect to fair hearings, it has delegated aspects of the process to other agencies.  The DOH has delegated the responsibility to schedule, conduct, and decide fair hearings to the New York State Office of Temporary and Disability Assistance, also a defendant in this action ("OTDA" or, collectively with the DOH, the "State" or "State defendants").  After they are issued decisions after fair hearing ("DAFHs") are returned to DOH, which forwards them to the relevant local social services district for implementation.  42 U.S.C. § 1396a(a)(1); N.Y. Soc. Serv. Law § 365(1).  The New York City Human Resources Administration ("HRA" or "City"), also a defendant, is the local social services administrator for New York City, and thus has been delegated the responsibility for implementing DAFHs for applicants in this area.  The State and City agencies have a policy in place for implementing DAFHs within ninety days of an applicants' request: OTDA is allocated sixty days in which to

hold the hearing and issue a decision, and HRA is allocated thirty days in which to implement it.  (Hauser Decl., Ex. H, HRA Memorandum, dated March 8, 1994.)


### B.   Shakhnes

The Shakhnes named plaintiffs all fall within a subset of Medicaid recipients: they are individuals who assert a need for home health services, for example assistance with eating, toileting, ambulating, food shopping, or turning over in bed.  (Pltfs. SJ Mem. 5.)  Their complaint states four causes of action.  Three are brought against the OTDA, the DOH, and the New York City HRA.  They allege: (1) a custom and practice of failing to take and/or ensure final administrative action within ninety days after fair hearing requests in home health cases; (2) a custom and practice of failing to provide and/or ensure the provision of timely and adequate notice of denials, reductions, or terminations of home health services; and (3) a custom and practice of failing to provide, and/or ensure the provision of home health services pending decisions on fair hearings for individuals who request hearings.  Each of these first three causes of action asserts claims, which plaintiffs seek to enforce through 42 U.S.C. § 1983, under the Medicaid statute and its implementing regulations, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and state law.  The fourth cause of action is brought against only the State defendants, the OTDA and the DOH; it alleges an unlawful custom and practice of failing to properly oversee and supervise City defendants' performance of their notice, ninety-day, and aid-continuing objections.

Defendants have moved against all four causes of action.  State defendants' motion to dismiss asserts that: (1) the Eleventh Amendment bars aspects of this action,

(2) there is no § 1983 cause of action for the rights plaintiffs seek to vindicate, (3) plaintiffs have received due process of law, (4) the State cannot be held vicariously liable for the City's misconduct, and (5) plaintiffs have failed to demonstrate the elements of an inadequate supervision claim.  Additionally the City has moved for summary judgment, asserting that: (1) plaintiffs lack standing to bring certain claims against the City, (2) there is no § 1983 cause of action for the rights plaintiffs seek to vindicate, and (3) plaintiffs' claims lack evidentiary support.

Plaintiffs have cross moved only with respect to their ninety-day claim.  Notably, plaintiffs seek certification of a class of Medicaid home health recipients only with respect to the ninety-day claims.  Furthermore plaintiffs have moved for partial summary judgment against both the City and the State only with respect to those claims, asserting that: (1) there is a § 1983 cause of action for the ninety-day claims, and (2) data produced through discovery reveals both City and State defendants' systemic noncompliance with the ninety-day requirement.

The court addresses each of these issues below.

### C.  Menking

Plaintiff Marie Menking alleges that she applied for Medicaid assistance to help pay for her nursing home care for a period from 2005 through 2006, but her application was denied in August 2007.  (Menking Compl. ¶ 1.)  She filed a timely request for a fair hearing on October 03, 2007, (*Id.*), a hearing was noticed for 127 days later on February 07, 2008,  (*Id.* ¶ 16) and at the time her Complaint was filed in April 2009 no decision

had issued (although a decision has since been issued).  (*Id.* ¶ 18.)  Menking seeks to

represent a class of:

> All current and future New York City applicants for, or recipients of Medicaid
> who have requested or will request Fair Hearings, for whom Defendants have not
> rendered and implemented or will not render and implement a Fair Hearing
> decision within 90 days from the date of the request.
> (*Id.* ¶ 21.)

Her complaint asserts two causes of action, one under 42 U.S.C. § 1983 for

violations of the Medicaid statute and its implementing regulations, and a second under

42 U.S.C. § 1983 for violations of the Due Process Clause of the Fourteenth Amendment

to the United States Constitution.  Both causes of action are brought jointly against the

DOH and OTDA.  No City agency is a defendant in the Menking case.

The State defendants have moved to dismiss the complaint on the grounds that:

(1) plaintiffs' causes of action have been mooted because she has received a decision

after fair hearing since filing the Complaint, (2) the Eleventh Amendment bars the Court

from issuing relief based on evidence of past conduct, (3) plaintiff lacks a § 1983 cause

of action for her ninety-day claim, (4) plaintiff has received due process, and (5) plaintiff

has not demonstrated prejudice as a result of delay.

These issues are also addressed below.


## II.  THRESHOLD ISSUES

### A.  Eleventh Amendment

In both the Shakhnes and Menking cases the State defendants correctly argue that

the Eleventh Amendment prohibits suits in federal court against state officials on the

basis of state law.  *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100

(1984).  Thus to the extent the Shakhnes and Menking complaints state claims under the

New York State Constitution, New York Social Services Law, and state agency

regulations, those claims must be dismissed as against the State defendants.  *See*

*Meachem v. Wing*, 77 F. Supp. 2d 431, 437-38 (S.D.N.Y. 1999) (dismissing nearly

identical state law claims).[1]  Unfortunately for defendants those are only a small part of

the plaintiffs' claims; the principal requirements they seek to enforce arise under federal

law enforceable against state officials.

Under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), "a state official . . .

may be sued in a federal forum to enjoin conduct that violates the federal Constitution,

notwithstanding the Eleventh Amendment bar."  *Dube v. State University of New York*,

900 F.2d 587, 595 (2d Cir. 1990).   That doctrine extends to suits against a state official

in violation of any federal law.  *See Kostok v. Thomas*, 105 F.3d 65, 68 (2d Cir. 1997).

Accordingly, plaintiffs' claims based on federal law, specifically the fair hearing

requirement in 42 U.S.C. § 1396a(a)(3) and its implementing regulations, are not subject

to the Eleventh Amendment bar on suits against state officials.  *See Meachem*, 77

F.Supp.2d at 437 ("[C]laims under federal statutory law such as…the Medicaid Act are

also not barred by the Eleventh Amendment.").

The State defendants also argue that any "declaratory relief" sought by plaintiffs

"may not be based upon evidence describing State defendants' past conduct" because the

Eleventh Amendment "does not permit judgments against State officers declaring that

they violated federal law in the past."  (State Def. Shakhnes MTD 11; State Def. Menking

MTD 12 (asserting that "the Complaint must be dismissed…for lack of subject matter

---

[1] Nothing in this Opinion should be read to prejudice the plaintiffs' ability to bring their State law
claims in State court.

jurisdiction" because any "determination as to whether Defendants violated federal law…involves a retrospective declaration".))  They therefore think that plaintiffs cannot prove their claims, which have as their evidentiary basis the past conduct of State officials.  Defendants are incorrect in stating that the Court is limited by the Eleventh Amendment as to what evidence it can consider, but correct that the Court is limited thereby in the relief it can grant.  "[W]hen a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief."  *Pennhurst*, 465 U.S. at 102-03 (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)).  But the Eleventh Amendment does not prevent the Court from considering evidence of past events, only from granting retroactive declaratory relief, since "the general criterion for determining when a suit is in fact against the sovereign is the *effect* of the relief sought."  *Id.* at 109 (emphasis in original).  If courts could not consider past *evidence*, there could never be an evidentiary basis for the kind of prospective relief that has been generally available since the Supreme Court decided *Ex Parte Young* in 1908.  Every federal court to issue prospective relief against state officials in the 102 years since has relied upon an evidentiary record reflecting a defendant's past conduct.  This Court is unwilling to part ways from their approach.  Accordingly the Court declines to limit the evidence it will consider; the Court will limit itself to prospective relief if and when such a judgment is entered.

### B.  Mootness

The State defendants assert that the Menking action is moot because Menking, the named plaintiff, has had a fair hearing since this litigation commenced.  However, "[w]here class claims are inherently transitory, 'the termination of a class representative's claim does not moot the claims of the unnamed members of the class.'"  *Robidoux v. Celani*, 987 F.2d 931, 938-39 (2d Cir. 1993) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11, 95 S. Ct. 854, 861 n. 11, 43 L. Ed. 2d 54 (1975));  *See Mental Disability Law Clinic v. Hogan*, No. 06 CV 6320, 2008 WL 4104460, at *9 (E.D.N.Y. Aug. 29, 2008) (noting that "some claims are 'so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'" (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 52, 111 S. Ct. 1661, 1667, 114 L. Ed. 2d 49  (1991)).  This is such a case.  Menking's claims allege a failure to take final administrative action within a ninety-day deadline.  However in the crowded federal courts, simply having a motion decided sometimes takes more than twice that long.  *See* 28 U.S.C. § 476(a)(1) (requiring a semiannual report (colloquially known as the "six month list") disclosing the motions pending for more than six months on each judicial officer's docket).  In that time even a delinquent fair hearing system is likely to render final action and moot a potential named plaintiff's particular case.  Thus assuming *arguendo* that Menking has received final administrative action—a disputed proposition that the Court need not now address—the Court declines to dismiss this action as moot.  *See Finch v. New York State Office of Children and Family Services*, 252 F.R.D. 192, 200 (S.D.N.Y. 2008) (although class

representatives alleging undue delay had received fair hearings, action not moot because "delays in administrative hearings are inherently transitory").

### C.  Availability of Article 78 Proceedings

In both Shakhnes and Menking the State defendants argue that the existence of a State administrative mandamus procedure known as Article 78 defeats aspects of the plaintiffs' case.  (State SJ Opp. 4-5 (failure to pursue Article 78 proceedings constitutes waiver of named plaintiffs' claims); State Shakhnes MTD Mem. 18-19 (availability of Art. 78 proceedings defeats due process claim as a matter of law); State Menking MTD Mem. 21-23 (same); State Class Cert. Opp. 4-5 (representation of counsel combined with availability of Article 78 proceedings defeats typicality).)

Defendants contend that "[f]ailure of a person represented by counsel to pursue available judicial remedies constitutes waiver of a future claim based on purported harm that might have been eliminated by use of those remedies."  (State SJ Opp. 4.)  This proposition has no support in the case law.  Rather, for purposes of § 1983, "[a] plaintiff is not required to exhaust state remedies before commencing an action pursuant to 42 U.S.C. § 1983."  *Meachem v. Wing*, 77 F. Supp. 2d 431, 436 (S.D.N.Y. 1999) (citing *Patsy v. Board of Regents*, 457 U.S. 496, 516, 102 S. Ct. 2557, 2568, 73 L. Ed. 2d 172 (1982) ("[W]e conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to §1983."); *Horowitz v. Bane*, 833 F. Supp. 1054, 1068 (S.D.N.Y. 1993) ("Defendants' argument that New York allows its fair hearing decisions to be challenged through an Article 78 proceeding is … misplaced.  The availability of state administrative procedures … does not foreclose

11

resort to § 1983 … [nor] [does] the failure to exhaust state administrative and judicial

remedies.").  Thus plaintiffs did not waive their § 1983 claims arising out of the Medicaid

statute by declining to bring Article 78 proceedings.

On the other hand in the Fourteenth Amendment due process context the

availability of state remedies can defeat a claim if (and only if) those remedies are

constitutionally adequate.  *See New York State National Organization for Women v.*

*Pataki*, 261 F.3d 156, 167-69 (2d Cir. 2001).  Thus in *Pataki* the Second Circuit

determined, after a bench trial below, that the Article 78 remedy was constitutionally

adequate and defeated the N.O.W.'s due process claim.  But due process may not be

satisfied if hearings come months after a deprivation, *Krimstock v. Kelly*, 306 F.3d 40 (2d

Cir. 2002), or where delays are egregious and without rational justification, *Kraebel v.*

*New York City Dept. of Housing Preservation & Development*, 959 F.2d 395, 405 (2d

Cir. 1992) (reversing lower court's grant of motion to dismiss), or if it is "the established

state procedure that destroys [plaintiff's] entitlement without according him proper

procedural safeguards",  *Id*.  Take, for example, the claims of named plaintiff Mikhail

Feldman, who suffers from diabetes, hypertension, arthritis, and severe dizziness.

(Hauser Decl., Ex. M.)  He had to delay two hernia surgeries while waiting over seven

months for a fair hearing.  (Hauser Decl., Ex. M.)  No post-deprivation remedy could

correct the months that Mr. Feldman's hernias went uncorrected.  Plaintiff's due process

claims are not necessarily barred by the state remedy, then, because they allege

systematic failures that are not adequately remedied by a post-deprivation proceeding.

Moreover the efficacy of the state remedy is questionable here where the injury is delay

and Article 78 proceedings are likely to take time themselves.  Accordingly the Court

declines to dismiss either the Shakhnes or Menking plaintiffs' due process claims based on the availability of Article 78 proceedings.[2]

### III. FAILURE TO STATE A CLAIM

Both Shakhnes and Menking raise the question of whether there exists a private cause of action under 42 U.S.C. § 1983 for failure to resolve fair hearings within ninety days of appeals.  The Court concludes that such a cause of action exists, and identifies its precise contours below.

42 U.S.C. § 1983 provides a civil cause of action for the deprivation of certain federal rights.  The statute imposes liability upon "[e]very person who, under color of any [law] of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]…."  42 U.S.C. § 1983.  There are no disputes here as to causation or whether the defendants acted under color of law.  Accordingly the operative question is whether some form of ninety-day administrative action requirement qualifies as among the "rights, privileges, or immunities secured by the Constitution and laws" enforceable through § 1983.

A § 1983 cause of action can be supported by nothing "short of an unambiguously conferred right." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).  Plaintiffs contend that congress unambiguously conferred such a right in the Medicaid statute at 42 U.S.C. § 1396a(a)(3), which requires that a Medicaid plan "must provide for granting an

---

[2] The Court need not extend the due process analysis further than the arguments raised in State defendants' motions to dismiss: Shakhnes has proceeded to summary judgment based on the Medicaid statute § 1983 claims, not the due process claims, and Menking has not yet moved for summary judgment.

opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness."

The § 1983 cause of action "inquiry requires 'a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries'...." *Loyal Tire & Auto Center, Inc. v. Town of Woodbury*, 445 F.3d 136, 149 (2d Cir. 2006) (quoting *Gonzaga*, 536 U.S. at 285-86). To determine whether Congress intended to confer individual rights upon a class of beneficiaries, courts look to: (1) "whether the statutory text is phrased in terms of the person benefited", (2) whether "the right assertedly protected by the statute is [] so vague and amorphous that its enforcement would strain judicial competence", and (3) whether the statute "unambiguously impose[s] a binding obligation on the States." *Id.* at 149-50 (quoting *Gonzaga*, 536 U.S. at 284; *Blessing*, 520 U.S. 329, 117 S. Ct. 1353, 137 L. Ed. 2d 569 (1997)). Each of these inquiries supports a § 1983 cause of action for 1396a(a)(3) violations: (1) the statutory text is literally phrased in terms of the "individual" aggrieved, (2) the right protected— fair hearings—is easily administered by judicial institutions, which are intimately familiar with issues of process, and (3) the statute unambiguously imposes a binding obligation: the fair hearing "must" be provided for. Accordingly the Court agrees with the other courts to have reviewed the issue and finds that the fair hearing requirement expressed in 42 U.S.C. § 1396a(a)(3) is enforceable through a 42 U.S.C. § 1983 cause of action. *See Gean v. Hattaway*, 330 F.3d 758, 772-73 (6th Cir. 2003); *D.W. v. Walker*,

2009 WL 1393818 (S.D.W. Va. 2009); *McCartney v. Cansler*, 608 F. Supp. 2d 694, 699 (E.D.N.C. Mar. 16, 2009).[3]

### A.  Ninety-day Claims

Having determined that § 1396a(a)(3) confers a federal right enforceable through § 1983, the Court turns to the content of that right.  The Federal Medicaid regulation at 42 C.F.R. § 431.244 mandates certain deadlines for taking final administrative action after requests for § 1396a(a)(3) fair hearings.  At 42 C.F.R. § 431.244(f) the regulation States:

> (f) The agency must take final administrative action as follows:
>
> (1) *Ordinarily, within 90 days* from the earlier of the following:
>
>> (i) The date the enrollee filed an MCO or PIHB appeal, not including the number of days the enrollee took to subsequently file for a State fair hearing; or
>>
>> (ii) If permitted by the State, the date the enrollee filed for direct access to a State fair hearing.
>
> (2) As expeditiously as the enrollee's health condition requires, but *no later than 3 working days after* the agency receives, from the MCO or PIHP, the case file and information for any appeal of a denial of a service that, as indicated by the MCO or PHIP—
>
>> (i) Meets the criteria for expedited resolution as set forth in § 438.410(a) of this chapter, but was not resolved within the timeframe for expedited resolution; or

---

[3] The analysis does not always end there.  The demonstration that a federal statute creates an individual right raises "only a rebuttable presumption that the right is enforceable under [Section] 1983." *Blessing*, 520 U.S. at 341.  The burden then shifts to defendants "to demonstrate that Congress has foreclosed a Section 1983 remedy, either by express Statements in the underlying statute, or by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under Section 1983." *Dajour B. v. City of New York*, 2001 WL 830674, at *8 (S.D.N.Y. July 23, 2001) (Koeltl, J.).  However defendants have limited their arguments to the lack of an individual right; they have not attempted to meet their burden at this second stage.  Accordingly the presumption carries and plaintiffs have a § 1983 cause of action.

(ii) Was resolved within the timeframe for expedited resolution, but reached a decision wholly or partially adverse to the enrollee.

(3) If the State agency permits direct access to a State fair hearing, as expeditiously as the enrollee's health condition requires, but *no later than 3 working days after* the agency received, directly from an MCO or PIHP enrollee, a fair hearing request on a decision to deny a service that it determines meets the criteria for expedited resolution, as set forth in § 438.410(a) of this chapter.

42 C.F.R. § 431.244(f) (emphases added).

Thus the regulation demands that "final administrative action" be taken "ordinarily, within 90 days" after a request for a fair hearing, and in some circumstances justifying expedited resolution that it be taken "not later than 3 working days after" receipt of the individual's file or her request for a fair hearing. *Id.* Such regulations can define the scope of a § 1983 cause of action for enforcement of the underlying statutory right so long as they merely define or flesh out the content of that right. *See D.D. v. New York City Board of Ed.*, 465 F.3d 503, 513 (2d Cir. 2006) ("[S]o long as the statute itself confers a specific right upon the plaintiff, and a valid regulation merely further defines or fleshes out the content of that right, then the statute—in conjunction with the regulation—may create a federal right as further defined by the regulation.") (quoting with approval *Harris v. James*, 127 F.3d 993, 1009 (11th Cir. 1997)). In *D.D.*, the Second Circuit analyzed the statutory right of disabled children to a "free appropriate public education," a right which provided for individualized education programs (IEPs), but "[did] not provide a time frame for implementing an IEP after its development." *Id.* at 507-09. The circuit court determined that because an administrative regulation

required that IEPs be implemented "as soon as possible," that standard governed D.D.'s §
1983 cause of action.  *Id.* at 512-14.

   Defendants argue that a §1983 cause of action defined by 431.244(f) would
impermissibly create a new regulatory right rather than simply interpret the scope of the
statutory "fair hearing" right.[4]  The Court disagrees.  The "ordinarily, within 90 days"
requirement in 42 C.F.R. § 431.244(f) is materially indistinguishable from the "as soon as
possible" requirement in *D.D.*.  In both, a formal administrative regulation specifies the
time limit for a government action mandated by the statute.  The Second Circuit held in
*D.D.* that the time limit did not create a new right but rather merely fleshed out the
content of its statutory counterpart, and this Court draws the same conclusion with
respect to the 90 day requirement in 431.244(f).  It stands to reason that placing a time
limit on government action merely fleshes out the right to that action—a right to action
implicitly includes a right to that action occurring within a certain time limit.  Just as
justice delayed is justice denied, so too is action delayed action denied.

   The need for prompt action in order to effectuate the fair hearing right may be
especially important when the issue is the wrongful denial of home health services.
Consider the case of plaintiff Fei Mock, a 25 year old woman who, as a polio sufferer,
needs assistance to help her use the restroom overnight and to turn in bed so as to prevent
bedsores and ease the pain in her back.  While awaiting an appeal she did not have

---

[4] Whether that move is impermissible is actually still an open question in this Circuit.  *D.D.*, 465
F.3d at 513.  Defendants' confusion on this point stems from their conflation of private causes of
action that stem from statutes and private rights enforceable through § 1983.  Thus they cite
*Alexander v. Sandoval*, 532 U.S. 275, 121 S. Ct. 1511 to support this argument even though it is a
private cause of action case.  However "whether a statutory violation may be enforced through §
1983 is a different inquiry than that involved in determining whether a private right of action can
be implied from a particular statute."  *Gonzaga*, 536 U.S. at 283 (internal quotation marks
omitted).

anyone to help her do these things; as a result her "nights are often very difficult because [she is] in such great pain, most of which could be alleviated if only there were an aide to reposition [her]." (Hauser Decl. Ex. L, Mock Decl. ¶¶ 11-17.) Moreover the issue is not merely theoretical as the majority of appeals result in reversal of the adverse decision. (Taylor Decl. ¶ 12, Ex. E.)

An unpublished Connecticut Superior Court opinion issued prior to *D.D.* supports defendants' contrary position, that plaintiffs do not have a § 1983 cause of action for the ninety-day claims. In *Turley v. Wilson-Coker*, the plaintiff had not asserted a private cause of action emanating from the Medicaid statute or from § 1983, but rather "contend[ed] that the deadlines found in [42 C.F.R. 431.244(f)] are enforceable by her on appeal…." No. CV030520265S, 2005 WL 1524952, at *9 (Conn. Super. Ct. 2005). Choosing to let the federal analysis guide its consideration of the issue, *id.*, the *Turley* Court determined that the regulation focused on the regulating agency, not the individual seeking the hearing, and accordingly could not be enforced. *Id.* at *12.

The Court chooses not to follow *Turley*, for several reasons. First, *Turley* was published prior to *D.D.*, which the Court considers controlling. Second, the Court disagrees with *Turley* as to the focus of 431.244(f)—although its requirements are imposed upon the agency ("the agency must"), they also focus on individual recipients ("the date the enrollee filed"). Third, whether the focus of the regulation is the individual or agency is not a relevant inquiry—*Turley* applies the standard applicable to whether a statute creates a private right rather than the separate inquiry of whether a regulation exceeds the scope of the statutory right. Fourth, *Turley* seems to limit regulatory interpretations of rights to those "necessarily implied" by the text of the statute. *Turley*,

2005 WL 1524952, at *11 ("[H]ere the regulations create an obligation that is not necessarily implied by the statutory right to a fair hearing.").  However that requirement essentially forecloses the possibility of meaningful interpretive regulations—courts do not need agency interpretations to tell them what requirements are "necessarily implied" by Congress, as they can determine that themselves.  Accordingly the Court declines to follow *Turley* and concludes that the 42 C.F.R. 431.244(f) "ordinarily, within 90 days" requirement defines the temporal element of a § 1983 cause of action for enforcement of 42 U.S.C. 1396a(a)(3).

      The inquiry does not end there.  Defendants assert that the "ordinarily" preceding the ninety-day requirement in subsection (1) of 42 C.F.R. 431.244(f) renders ambiguous exactly when that requirement is inapplicable, making enforcement impractical.  However subsections (2) and (3) describe situations where final administrative action must be taken not within ninety days, but instead:

> (2) As expeditiously as the enrollee's health condition requires, but *no later than 3 working days* after the agency receives, from the MCO or PIHP, the case file and information for any appeal of a denial of a service that, as indicated by the MCO or PHIP—
>
> > (i) Meets the criteria for expedited resolution as set forth in § 438.410(a) of this chapter, but was not resolved within the timeframe for expedited resolution; or
> >
> > (ii) Was resolved within the timeframe for expedited resolution, but reached a decision wholly or partially adverse to the enrollee.
>
> (3) If the State agency permits direct access to a State fair hearing, as expeditiously as the enrollee's health condition requires, but *no later than 3 working days* after the agency received, directly from an MCO or PIHP enrollee, a fair hearing request on a decision to deny a service that it determines meets the criteria for expedited resolution, as set forth in § 438.410(a) of this chapter.

42 C.F.R. 431.244(f) (emphasis added).  Thus read as a whole the regulation is not

ambiguous; it explains to which extraordinary situations the ninety-day requirement is

inapplicable.

      Moreover the United States Department of Health and Human Services ("HHS")

has provided further guidance on how the ninety-day requirement should be

administered.  The State Medicaid Manual ("SMM"), issued by HHS through the Centers

for Medicare & Medicaid Services ("CMS"), explains 42 C.F.R. 431.244(f) as follows:

> 2902.10  <u>Prompt, Definitive And Final Action (42 CFR 431.244(f))</u>.--The
> requirement for prompt, definitive, and final administrative action means
> that all requests for a hearing are to receive prompt attention and will be
> carried through all steps necessary to completion. The requirement is not
> met if the State dismisses such a request for any reason other than
> withdrawal or abandonment of the request by the claimant or as permitted
> elsewhere in these instructions.  *Adhere to the time limit of 90 days
> between the date of the request for the hearing and the date of final
> administrative action except where the agency grants a delay at the
> appellant's request, or when required medical evidence necessary for the
> hearing can not be obtained within 90 days.  In such case the hearing
> officer may, at his discretion, grant a delay up to 30 days.*

SMM § 2902.10 (emphasis added).  SMM § 2902.10 is an informal regulation, not

promulgated through notice and comment rulemaking and thus not afforded the same

kind of deference as formal rules like 42 C.F.R. 431.244(f).  Nonetheless "[a]n agency's

interpretation of its own statute and regulation 'must be given controlling weight unless it

is plainly erroneous or inconsistent with the regulation."  *Oteze Fowlkes v. Adamec*, 432

F.3d 90, 97 (2d Cir. 2005) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504,

512, 114 S. Ct. 2381, 129 L. Ed. 2d 405 (1994)); *Thomas Jefferson Univ.*, 512 U.S. at

512 (adding that "we must defer to the Secretary's interpretation unless an alternative

reading is compelled by the regulation's plain language or by other indications of the

Secretary's intent at the time of the regulation's promulgation") (internal quotation marks

omitted);  *see New York Currency Research Corp. v. Commodity Futures Trading Commission*, 180 F.3d 83, 88 (2d Cir. 1999).[5]  The interpretation of the ninety day requirement in § 2902.10 is a reasonable interpretation of § 431.244(f).  § 431.244(f) provides for limited exceptions to the 90 day rule in unusual cases, and § 2902.10 also describes two such situations: a 30 day delay is permitted "where the agency grants a delay at the appellant's request, or when required medical evidence necessary for the hearing can not be obtained within 90 days."  Those exceptions are consistent with not only the regulation's focus on prompt action to the benefit of individual Medicaid enrollees, but with the basic due process principles the Court would otherwise apply to the "fair hearing" right granted by 42 U.S.C. § 1396a(a)(3).

For the foregoing reasons, plaintiff Medicaid recipients have in 42 U.S.C. § 1396a(a)(3) a right to a fair hearing enforceable through 42 U.S.C. § 1983.  The regulations at 42 C.F.R. 431.244(f) and SMM § 2902.10 define the content of that right.  The right is violated when the agency fails to carry the hearing through all steps

_____

[5] The Second Circuit declined to defer to the SMM-promulgated agency interpretation of the Medicaid *statute* in *Rabin v. Wilson-Coker*, 362 F.3d 190, 197 (2d Cir. 2004) (reviewing SMM interpretation of Medicaid statute eligibility provisions).  Although the *Rabin* Court explained that informal regulations "merit some significant measure of deference," it noted that "[t]he exact degree of deference depend[s] upon 'the agency's expertise, the care it took in reaching its conclusion, the formality with which it promulgates its interpretations, the consistency of its views over time, and the ultimate persuasiveness of its arguments.'"  *Id.* at 197-98 (quoting *Community Health Ctr. v. Wilson-Coker*, 311 F.3d 132, 138 (2d Cir. 2002).
        In *Rabin*, the Second Circuit applied these factors to a SMM provision regarding Medicaid eligibility.  Although it noted that "CMS, the agency charged with administering Medicaid, has acknowledged expertise in this area," it ultimately concluded that the interpretation should be afforded a low level of deference, "that degree of deference [the interpretation] reasonably deserves in light of the other canons of interpretations."  *Id.* at 198.  It applied that lower level of deference for two reasons.  First, it doubted the process used to develop the interpretation in light of the fact that a contrary Eighth Circuit interpretation had apparently not been considered.  *Id.*  Second, noted that CMS itself labeled the interpretation as "tentative."
        Neither of those diminishing factors apply here.  Just as in *Rabin*, the CMS is an agency with acknowledged expertise in the area.  But unlike in *Rabin*, the Court is aware of no contrary court interpretations and the regulation has not been labeled as tentative.

necessary to completion within ninety days of the request for the hearing, except where the agency grants a delay at the appellant's request, or when required medical evidence necessary for the hearing can not be obtained within ninety days, in which cases an additional thirty day delay is permitted.  Additionally when a case meets the criteria for expedited resolution set forth in § 438.410(a), final administrative action must be taken as expeditiously as the enrollee's health condition requires, but no later than 3 working days after the agency receives the appellant's file or her fair hearing request.

That cause of action extends to municipal actors so long as they are alleged to violate that right under color of State law.  "[W]here a participating State has delegated responsibility for the administration of a federally mandated program such as Medicaid— as New York State has done—that mandate is binding on both State and local authorities."  *Dajour B.*, 2001 WL 830674, at *9 (S.D.N.Y. July 23, 2001) (citing *Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 385 (S.D.N.Y. 2000)).  Furthermore the "duty to comply with federal statutory requirements is shared jointly by the State and City defendants." *Reynolds*, 118 F. Supp. 2d at 385.[6]

---

[6] City defendants briefly argue that this right does not extend to enrollees in Medicaid Managed Care programs because those programs are under additional obligations pursuant to 42 U.S.C. § 1396u-2(a)(1)(A)(i).  However nothing in § 1396u-2(a)(1)(A)(i) forecloses mutual obligations under the Medicaid statute, and the implementing regulations indicate that the two are coextensive.  *See* 42 C.F.R. § 438.402 (requiring that MCOs have "a system in place for enrollees that includes a grievance process, an appeal process, and access to the State's fair hearing system").  There is no per se exclusion then of a § 1396a(a)(3) cause of action for an MCO enrollee, although any such individual would need to prove an obligation breached by the City or State Medicaid agency in order to prove the causation prong of a § 1983 claim.  As noted, plaintiffs do not seek class certification with respect to these claims.

### B.   Notice and Aid-Continuing Claims

The analysis is similar with respect to plaintiffs' individual claims relating to

notice and aid-continuing asserted in Counts II and III of the complaint.  The fair hearing

regulations state that:

> (b) The agency must, at the time specified in paragraph (c) of this section, inform
> every applicant or recipient in writing—
>
>> (1) Of his right to a hearing;
>>
>> (2) Of the method by which he may obtain a hearing; and
>>
>> (3) That he may represent himself or use legal counsel, a relative, a friend,
>> or other spokesman.
>
> (c) The agency must provide the information required in paragraph (b) of this
> section—
> …
>
>> (2) At the time of any action affecting his or her claim.

42 C.F.R. §§ 431.206(b)-(c).  Just as a time requirement for a fair hearing merely fleshes

out the parameters of the right to that hearing, so too does the notice requirement set forth

in the regulations.  A right to appeal would be rendered meaningless if its bearers did not

know when or how they could use it.[7]  Thus there is a private right to notice in the fair

---

[7] The content of that notice is also mandated by regulation:
> A notice required under § 431.206(c)(2), (c)(3), or (c)(4) of this subpart must
> contain—
>
>> (a) A Statement of what action the State, skilled nursing facility, or
>> nursing facility intends to take;
>>
>> (b) The reasons for the intended action;
>>
>> (c) The specific regulations that support, or the change in Federal or
>> State law that requires, the action;
>>
>> (d) An explanation of—

hearing context that is enforceable through a § 1983 cause of action.  As regards aid-continuing, the regulations require that if an applicant timely requests a fair hearing, "the agency may not terminate or reduce services until a decision is rendered after the hearing unless— (1) It is determined at the hearing that the sole issue is one of Federal or State law or policy; and (2) The agency promptly informs the recipient in writing that services are to be terminated or reduced pending the hearing decision."  42 C.F.R. § 431.230(a). This regulation also fleshes out the statutory right to a fair hearing found in 42 U.S.C. § 1396a(a)(3).  Without aid-continuing no appellate remedy could issue for the reduction in services that would occur between issuance of an adverse decision and its subsequent reversal on appeal.   Thus the named plaintiffs have a private right to aid-continuing pending a fair hearing that is enforceable through a § 1983 cause of action.

### C.   Vicarious Liability and Inadequate Supervision

State defendants move to dismiss the notice and aid continuing claims as against them because "they are not vicariously liable for the [City] HRA's misconduct."  (State Def. Shakhnes MTD 20.)   However the complaint does not merely allege vicarious liability on the part of the State defendants for the aid-continuing claim; for that claim it alleges direct liability.  The complaint alleges that "defendants, separately and together,

---

(1) The individual's right to request an evidentiary hearing if one is available, or a State agency hearing; or

(2) In cases of an action based on a change in law, the circumstances under which a hearing will be granted; and

(e) An explanation of the circumstances under which Medicaid is continued if a hearing is requested.

42 C.F.R. § 431.210.

have a custom and practice of failing to provide, and failing to ensure the provision of, aid-continuing." (Valle Intervenor Compl. ¶ 128.)[8] Moreover it supports that claim with factual content; the complaint alleges that State defendants "have a custom and practice of issuing Aid-Continuing Orders and DAFHs which run against [City defendant] even though [City defendant] does not contract with CHHAs. This routinely results in compliance problems because [City defendant] takes the position that she does not have any control over CHHAs." (*Id.* ¶ 132.) Accordingly Count III states a claim against State defendants for failure to provide aid-continuing.

On the other hand there are no such direct allegations against the State defendants as to the notice claim. Rather the complaint somewhat surprisingly alleges only that "[City defendant] has a custom and practice of routinely failing to provide timely and adequate notice of denials, reductions or termination of home health services," and that "State defendants have a custom and practice of routinely failing to supervise [City defendant]" in so doing. (*Id.* ¶ 126.) As against the State defendants, then, Count II does not allege a direct failure to provide notice, but rather a failure to supervise.

Similarly defendants have moved to dismiss plaintiff's fourth cause of action which alleges inadequate supervision on the part of the State defendants with respect to each of the City's notice, aid-continuing, and ninety-day practices. Such claims are difficult to plead in the § 1983 context. The Supreme Court has left only a "narrow opening for § 1983 claims…based not on affirmative conduct but on a government official's failure to act." *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007).

---

[8] Although plaintiffs cite to the prior amended complaint, on July 22, 2009 the Court granted plaintiffs' application to intervene [80]. The Court therefore cites to the relevant sections of the intervenor complaint. There are no material differences between the two complaints with respect to the discussion in this section.

"Plaintiffs must prove in the end that the State defendants' inadequate supervision actually caused or was the moving force behind the alleged violations." *Id.* at 193. Such claims are governed by the standard of *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978), which requires that plaintiffs:

> (1) establish State defendants' duty to act by proving they should have known their inadequate supervision was so likely to result in the alleged deprivations so as to constitute deliberate indifference under *Walker* [*v. City of New York*, 974 F.2d 293 (2d Cir. 1992)]; (2) identify obvious and severe deficiencies in the State defendants' supervision that reflect a purposeful rather than negligent course of action; and (3) show a causal relationship between the failure to supervise and the alleged deprivations to plaintiffs.

*Reynolds*, 506 F.3d at 193. Although these elements are difficult to satisfy, liability is not foreclosed if the supervisor has made only nominal attempts to cure the deprivation. "If a supervisor's steps are proven so meaningless or blatantly inadequate to the task that he may be said to be deliberately indifferent notwithstanding his nominal supervisory efforts, liability will lie." *Id.* at 196.

Plaintiffs' complaint inadequately pleads the second element of a *Monell* deliberate indifference claim since it does not identify particular deficiencies in the State defendants' supervision that reflect a purposeful rather than negligent course of action. The complaint alleges defendants' "custom and practice" of "failing to supervise" but never identifies particular deficiencies in that supervision. Since it completely fails to plead allegations supporting the second element of a *Monell* claim, Count IV of the complaint fails to State a claim and must be dismissed.

Plaintiffs argue that they should be given leave to replead their inadequate supervision claim "to conform with the proof" they have developed through discovery. (Shakhnes MTD Opp. 23 n.6.) "It is the usual practice upon granting a motion to dismiss

to allow leave to replead." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Although plaintiffs have twice amended their complaint, they have never had the opportunity to do so after being put on notice of the arguments in defendants' motion to dismiss. Thus the Court finds it appropriate to dismiss Count IV of the complaint without prejudice, and to similarly dismiss without prejudice Counts II and III as against the State defendants to the extent that they allege vicarious liability. Plaintiffs have leave to amend to correct these deficiencies if they so choose.

## IV.  CLASS CERTIFICATION

This discussion relates only to the Shakhnes plaintiffs—Medicaid home care recipients.[9] Although these plaintiffs originally sought certification of a class of home care recipients for ninety-day, notice, and aid-continuing claims, in their reply papers they have withdrawn their motion for certification with respect to the notice and aid-continuing claims.[10] Accordingly the Court addresses plaintiffs' motion for class certification only with respect to defendants' alleged violation of the ninety-day requirement.

Plaintiffs move pursuant to Rule 23 to certify the following class:

All New York City applicants for, and recipients of, Medicaid-funded home health services, who have requested or will request Fair Hearings challenging adverse actions regarding their home health services, and who are not challenging any decision regarding Medicaid eligibility.

---

[9] The plaintiffs in Menking have not yet moved for class certification, although the Menking complaint purports to make class claims on behalf of all Medicaid recipients, whether home care or otherwise.

[10] Shakhnes Class Cert. Rep. at 1 n.1 ("Plaintiffs hereby withdraw their motion for class certification with respect to their notice and aid-continuing claims but do not waive the right to litigate these claims.").

(Shakhnes Class Cert. Rep. at 22.)

A district court's analysis of a class certification request generally proceeds in two steps, both of which are governed by Rule 23.  As a threshold matter, the court must be persuaded, "after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982).  Rule 23(a) provides:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These requirements are frequently referred to as "numerosity," "commonality," "typicality," and "adequacy."  *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 263 F.R.D. 78, 88 (D. Conn. 2009) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000)). If a court determines that the Rule 23(a) requirements have been met, it must then decide whether the class is maintainable pursuant to one of the subsections of Rule 23(b), which govern, *inter alia*, the form of available relief and the rights of absent class members.  In this case, plaintiffs urge the Court to certify a class under subsection (2) of Rule 23(b), which provides, in part:

> (b)  Types of Class Actions.  A class action may be maintained if Rule 23(a) is satisfied, and if:
> . . .
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole;

Fed. R. Civ. P. 23(b).

Before beginning this two-step Rule 23 analysis, the Court takes notice of several guiding principles.  First, district courts are "afforded substantial leeway in deciding issues of class certification," *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 162 (2d Cir. 2001), and class certification is conditional—"[e]ven after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation." *General Telephone Co.*, 457 U.S. at 160 (1982); Fed. R. Civ. P. 23(c)(1)(C).[11]

Second, although a district court has "an obligation to make a determination that every Rule 23 requirement is met before certifying a class," there is no need to consider the merits if the "merits issue is unrelated to a Rule 23 requirement."  *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).  The ultimate evidentiary burden is on the plaintiff and "the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."  *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).  The court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met."  *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d at 41.  The determination that each element has been met "can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met."  *Id.*

---

[11]  Federal Rule 23(c)(1)(C) provides in relevant part: "An order that grants or denies class certification may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).

### A.   Rule 23(a) requirements

#### 1.  Numerosity

The purpose of the numerosity requirement is to promote judicial economy by avoiding a multiplicity of actions.  *See, e.g.*, *Robidoux,* 987 F.2d at 935-36.  Both City and State defendants concede that the numerosity requirement is met, and the Court agrees.  Plaintiff's expert Richard Faust reviewed 525 home health service fair hearings from 2005-2006.  (Taylor Decl. ¶ 12, Ex. E.)  Although that number does not give a precise indication of how many plaintiffs are in the proposed class (many class members likely did not request fair hearings during that time period, and some may have requested multiple hearings, etc.), there is no doubt the class numbers at least in the hundreds—easily enough to find that joinder would be impractical and that the numerosity requirement has thus been satisfied.  *See, e.g.*, *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (noting that "numerosity [is] presumed at a level of 40 members") (citing 1 *Newberg On Class Actions 2d*, (1985 Ed.) § 3.05 (2d ed. 1985)).  Furthermore joinder would be particularly impracticable here where the class members suffer from poor health and are in many cases homebound, thus rendering difficult individual actions or joinder.

#### 2.  Commonality and Typicality

The commonality requirement is satisfied where the "issues involved are common to the class as a whole," such that they "turn on questions of law applicable in the same manner to each member of the class."  *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).  This requirement is not quantitative in nature; that is, it is possible to satisfy Rule 23(a)(2) where only a single issue is common to the members of the proposed class, as

long as resolution of that issue will advance the litigation.  *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997), *aff'd*, 164 F.3d 81 (2d Cir. 1998).  For this reason, the commonality requirement is "easily met in most cases," especially where the "party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action." 1 Newberg on Class Actions § 3.10 (4th ed.); *Franklin v. City of Chicago,* 102 F.R.D. 944, 949 (N.D. Ill. 1984) (where the question of law involves "standardized conduct of the defendant[] toward[s] members of the proposed class, a common nucleus of operative fact is typically presented and the commonality requirement . . . is usually met.")

Rule 23(a)(3) "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted).  The typicality criterion does *not* require that the "factual predicate of each claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  *Romano v. SLS Residential Inc.*, 246 F.R.D. 432, 445 (S.D.N.Y. 2007).

As noted by the Supreme Court in *Falcon*,

The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

457 U.S. at 157 n.13.  Therefore the Court will consider whether plaintiffs have met the commonality and typicality requirements here in tandem.

The two core issues in this case are common to the class as a whole.  The class members are all current Medicaid funded home-care applicants who have been or are likely to be thrust into the City and State fair hearing system.  First, there is a common question as to what the law requires of that system, specifically whether a ninety-day DAFH requirement must be met.  Second, there is a common question as to whether the City and State fair hearing systems, respectively, violate those requirements.  Accordingly the Court finds that the commonality requirement is met.  *See Cutler v. Perales*, 128 F.R.D. 39, 44-47 (S.D.N.Y. 1989) (certifying class of Medicaid recipients challenging delays in fair hearings and finding common questions as to whether ninety-day rule was violated); *Marisol A.*, 126 F.3d at 377 (commonality determination based on generalized understanding of entitlement to administrative services appropriate when systematic violations alleged).

The typicality requirement is met here as well.  The claims of the named plaintiffs are typical of the putative class in that all have suffered from the fair hearing delays resultant from defendants' administrative practices.  All class members would likely rely on the same legal theory as the named plaintiffs—a cause of action for violation of the ninety-day requirement, or perhaps a constitutional due process theory.  Thus the claims of the class representatives are typical of the claims of the class.  *See Cutler*, 128 F.R.D. at 44-45 (claims of Medicaid recipients who had suffered fair hearing delays were typical of class of such claimants); *see also Robidoux*, 987 F.2d at 937 (2d Cir. 1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named

plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

City defendants assert that the commonality requirement is not met because "plaintiffs have failed to produce evidence before this Court that there is a systemic problem of City defendant failing to … comply[] with DAFHs in a timely manner." (City Class Cert. Opp. 16.)  But whether there is or is not such a systemic problem is a question that supports commonality—it is a question relevant to the claims of each individual class member.  City defendants do not demonstrate that this question is not common to the class, but simply explain why it ought to be answered in the negative. This argument therefore does not defeat the Court's finding as to commonality.

State defendants argue that the typicality requirement has not been met for two reasons, none of which in fact defeat typicality.  First, State defendants argue that the phrase "home health services" excludes most of the named plaintiffs because it has a particularized meaning in the Medicaid statute.  But plaintiffs and the Court do not use "home health services" in that way; the term has been used throughout this litigation to include the personal care and long term home health services that the State defendants now contend are excluded.  Thus this argument fails to defeat a finding of typicality, although in an abundance of caution the Court will amend the proposed class definition to make explicit the inclusion of home personal care, long term home health, and intensive CHHA services.

Second, State defendants argue that plaintiffs' claims are not typical because the named plaintiffs have the representation of counsel, while most class members do not. As defendants would have it, their Article 78 waiver arguments, discussed in section II.C,

*supra*, render the named plaintiffs' claims atypical of the class claims.  However this argument takes for granted two incorrect propositions: (1) that the named plaintiffs waived their claims by not pursuing Article 78 cases in State court after experiencing unlawful delays, and (2) that Article 78 waiver only applies to a potential plaintiff who is actually represented by counsel when the delay occurs.  As discussed in section II.C, *supra*, defendants' Article 78 argument lacks merit.  And perhaps more fatally, even as asserted by defendants nothing about the Article 78 argument requires representation by counsel; its conditions are simply the existence of an Article 78 option and the failure to pursue it.  For each of those reasons this argument does not defeat a finding of typicality.

### 3.  Adequacy

The Rule 23(a)(4) test for adequacy has undergone recent changes.  The test originally encompassed two determinations, both that (i) the proposed class representatives have no conflicts of interest with other members of the class; and (ii) that the representatives' class counsel be well qualified, experienced and capable of handling the litigation in question.  *See In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 142 (2d Cir. 2001).  However, the Advisory Committee Notes to the 2003 Amendments to Federal Rule 23(g), effective December 1, 2003, state that "Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while [Rule 23(g)] will guide the court in assessing proposed class counsel as part of the certification decision."  Thus, because Rule 23(a)(4) no longer governs the selection of class counsel, the Court will only address the adequacy of the proposed class representatives in this section.

34

Although "a court must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation," *Kline v. Wolf*, 702 F.2d 400, 402-03 (2d Cir. 1983), courts should "carefully scrutinize the adequacy of representation in all class actions." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968). That scrutiny is generally directed to three areas. First, courts should consider whether the proposed plaintiffs are credible. *See Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 549 (1949) (class representative is a fiduciary, and interests of the class are "dependent upon his diligence, wisdom and integrity"); *Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990) ("A plaintiff with credibility problems . . . does have interests antagonistic to the class.") (internal quotation marks omitted). Second, courts should consider whether the proposed plaintiffs have adequate knowledge of the case and are actively involved. *See Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 61-62 (2d Cir. 2000) (recognizing knowledge as a factor to consider in determining class certification but noting that it is properly considered in connection with the "typicality" requirement of Rule 23(a)(3)). Finally, they should consider whether the interests of the proposed plaintiffs are in conflict with those of the rest of the class. *Epifano v. Boardroom Business Products, Inc.*, 130 F.R.D. 295, 300 (S.D.N.Y.1990) (noting that where defendants have claims for contribution against potential class representatives, their interests might conflict with those of the class).

The named plaintiffs and the class members do not have any identifiable antagonistic interests, since all would benefit from improved procedures for rendering decisions after fair hearings. Plaintiffs and class members alike are people who depend

on state social services for the basic needs of their lives; they have an identity of interest in the way those services are managed and distributed.  Defendants' only objection to adequacy is their Article 78 argument refuted above in the typicality context.  Nor is there any reason to doubt plaintiffs' knowledge of this case or credibility.  Accordingly, the Court finds that the named plaintiffs will adequately represent the interests of the class and therefore satisfy Rule 23(a)(4).  *See Marisol A.*, 126 F.3d at 378 (adequacy requirement met where "[p]laintiffs seek broad based relief which would require the child welfare system to dramatically improve the quality of all of its services, including proper case management [because] [i]n this regard, the interests of the class members are identical").

### B.  23(b)(2)

Plaintiffs contend that the class should be certified pursuant to Rule 23(b)(2). Certification under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  "[S]ubdivision (b)(2) was added to Rule 23 in 1966 in part to make it clear that civil-rights suits for injunctive or declaratory relief can be brought as class actions."  7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1776 (3d ed. 2005).  As such civil rights actions like this one—alleging systemic administrative failures of government entities—are frequently granted class action status under Rule 23(b)(2).  *See, e.g.*, *Finch v. N.Y. State Office of Child & Family Serv.*, 252 F.R.D. 192, 198 (S.D.N.Y. 2008) (certifying Rule 23(b)(2)

class of child abuse appellants alleging undue delay in administrative hearings); *Cutler*, 128 F.R.D. at 47 (certifying Rule 23(b)(2) class of Medicaid home health care recipients alleging fair hearing processing delays); *Henrietta D. v. Giuliani*, No. 95 CV 0641 (SJ), 1996 WL 633382 (E.D.N.Y. Oct. 25, 1996) (certifying Rule 23(b)(2) class of HIV infected public assistance beneficiaries challenging alleging administrative deficiencies). Certification under Rule 23(b)(2) is similarly appropriate in this case: plaintiffs allege that defendants systematically fail to implement fair hearing decisions within ninety days, and they seek an injunction mandating that they improve fair hearing procedures so as to meet that ninety-day requirement.  Defendants are thus alleged to have refused to act on generally applicable grounds, and final injunctive relief with respect to the class as a whole will likely be appropriate.  Accordingly the Court concludes that the requirements of Rule 23(b)(2) have been met.

City defendant contends that certification under rule 23(b)(2) is inappropriate because plaintiffs have not proven that the City has acted or refused to act on grounds applying generally to the class.  (City Class Cert. Opp. 20.)  However this is a merits argument—it is sufficient for class certification that the class plaintiffs' claims allege generally applicable conduct by the City defendants, and seek generally applicable injunctive relief.  Moreover there is evidentiary support for that claim.  Plaintiffs' expert found that the City exceeded its own 30-day deadline in 84% of cases, and City defendant concedes no less than a 23% non-compliance with that deadline.  (City Class Cert. Opp. 22.)  This alone is certainly sufficient to establish at the class certification stage that plaintiffs have proferred evidence of systematic failure by the City of its obligations under the Medicaid statute and its implementing regulations.  The City has acted or

refused to act on grounds generally applicable.  Moreover the appropriate remedy for the alleged systematic failures would be generally applicable prospective relief.  Accordingly class certification under Rule 23(b)(2) is appropriate.

### C.   Inequitable Results and Possible Future Litigation

State defendants object to class certification for a reason that does not quite apply to the requirements of Rule 23.  They contend that the class definition will lead to inequitable results because it only includes those Medicaid recipients who receive home health benefits.  The State asserts that if relief is granted on behalf of the proposed class, "the Court is ordering defendants to provide final administrative action to the Shakhnes class members before processing other Medicaid fair hearings if necessary," and that furthermore "[t]here is no principled reason for such an Order."  (State Def. Class Cert. Opp. 6.)

State defendants are wrong about the relief the Court could order for the Shakhnes class.  The relief plaintiffs seek would order defendants to comply with the ninety-day requirement in processing the claims of home health recipients; it would not address the relative priorities of other Medicaid recipients.  To be clear, under the Court's reading of the Medicaid statute and its implementing regulations, the State is obligated to implement final administrative action within ninety-days of fair hearing requests for *all* Medicaid recipients.  This is not a zero sum game—defendants can and should accelerate their fair hearing processes for home health recipients without slowing their processes for other kinds of Medicaid recipients.

The reason this objection does not quite fit within the Rule 23 requirements is that prejudice to third parties is simply not an element of Rule 23.  While *intra*-class conflicts are a barrier to certification, inter-class conflicts are not.  That is the reason courts have regularly approved the use of subclass bifurcation to answer intra-class conflicts.  *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838-41, 119 S.Ct. 2295, 2311-12 (1999) (noting availability of subclasses with separate representation to eliminate conflicting interests).  Defendants' objection reads better on the Rule 19 definition of necessary parties.  Under Rule 19 a party should be joined when possible if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impeded the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  Here, the Court can accord complete relief among the existing parties without the other Medicaid recipients; an injunction mandating improved service in home health services will fully satisfy the claims of the home health recipient class.  And as a practical matter, the other Medicaid recipients will remain just as able to protect their interests; in fact their positions would be improved by the precedent the home health recipients hope to set.  Finally, there is no risk of State defendants incurring double, multiple, or otherwise inconsistent obligations: this action will set forth the requirements to be met in home health cases, and a subsequent action may set the requirements for other Medicaid cases.  Even if those requirements are different, there is no reason they will not be concomitantly actionable as for their respective class members.  Accordingly

defendants' inequitable results argument fails even if couched as a necessary party argument.

The Court would be remiss if it did not address one procedural matter that is highlighted by defendants' inequitable results objection. Why not consolidate the Shakhnes and Menking actions and proceed with either a single all-Medicaid class or subclasses? The reason is this: the Shakhnes action has proceeded for four years as a home health only class action, has completed discovery, and is ripe for summary judgment on the ninety-day claim. On the other hand the Menking action was much more recently filed and is still in its nascent stages. The proof of systematic delay developed by the Shakhnes plaintiffs—including numerous depositions and dueling expert reports—is addressed primarily to home health recipients and is not readily convertible to the Menking class wide claims. It would be inefficient to throw all of that away and start over. Thus although further consolidation would be warranted were the Shakhnes and Menking actions at similar stages of litigation, it is inappropriate in light of the procedural posture of these cases.

### D.  Younger Abstention

State defendants assert that the Court should narrow the class to comply with abstention principles because of the pendency of a State court action relating to fair hearings in Medicaid-funded home health cases. "The doctrine established by *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its successors forbids federal courts from enjoining ongoing State proceedings." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004). "*Younger* abstention is mandatory when: (1)

40

there is a pending State proceeding, (2) that implicates an important State interest, and (3) the State proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003).   However the State court proceeding referenced by defendants is 'pending' only in the most technical sense of the word: the plaintiffs in *Varshavsky v. Perales*, Index No. 4076/91, (Sup. Ct. N.Y. Cty.), 12/18/91 N.Y.L.J. 22, (col. 2), won their injunction in 1991, although its terms are still in force. Furthermore the cases address different subject matter.  *Varshavsky* addresses the location of fair hearings for individuals who cannot attend a central hearing location due to disabilities; it does not directly address the right to a decision after fair hearing within ninety days of a request.  Thus relief in this case need not enjoin the *Varshavsky* proceedings and there is therefore no injunction of State proceedings to raise the *Younger* issue.  Accordingly, the Court does not agree that the pendency of *Varshavsky* requires it to narrow the plaintiff class.

### V. SUMMARY JUDGMENT

The City has moved for summary judgment dismissing all of the Shakhnes plaintiffs' claims against it, and the Shakhnes plaintiffs have cross-moved for partial summary judgment against both the City and State defendants as to their ninety-day claims under the Medicaid statute.  Under Federal Rule of Civil Procedure 56(c) summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

41

"The plain language of Rule 56(c) mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  A party moving for summary judgment may discharge its burden "by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Federal Rule of Civil Procedure 56(e) requires that a party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  This requirement has particular value when a party's responsive documents are long on speculation and short on specific facts.  "[S]peculation alone is insufficient to defeat a motion for summary judgment." *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n. 4 (2d Cir. 2006).  "The law is well established that conclusory statements, conjecture, or speculation are inadequate to defeat a motion for summary judgment."  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 85 (2d Cir. 2005).

### A.   City Defendant's Motion for Summary Judgment

City defendants have moved for summary judgment dismissing all of plaintiff's claims.  In addition to arguing that the complaint fails to state a claim, discussed *supra*, Section III, the City argues: (1) that the claims made by plaintiff Sha Sha Willis must be dismissed because he is deceased, (2) that plaintiffs lack standing to sue the City, (3) that

plaintiffs have received due process as a matter of law, and (4) that the City is substantially complaint with its ninety-day, notice, and aid-continuing obligations. Mr. Willis has indeed passed and his allegations cannot support plaintiffs' case, although plaintiff Mayra Valle has intervened in his stead. ([80] (granting request for intervention of plaintiff Mayra Valle and permitting City defendant to make appropriate arguments in opposition to plaintiff's motion for class certification).) The Court addresses City defendant's other summary judgment arguments in turn.

       *1. Standing*

City defendant contends that the Shakhnes plaintiffs lack standing to bring their ninety-day claims against the City. Article III of the U.S. Constitution limits the authority of the federal courts to those claims that are a "case or controversy." *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). To effectuate this limitation courts require, *inter alia*, that a potential plaintiff have "standing" to sue. Standing requires that "a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Horne v. Flores*, 129 S.Ct. 2579, 2592, 174 L. Ed. 2d 406 (2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L. Ed. 2d 351 (1992)). City defendants contest only the injury in fact prong of the standing requirement.

Injury in fact is a "low threshold" that "need not be capable of sustaining a valid cause of action, but may simply be the fear or anxiety of future harm." *Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008) (internal quotation marks omitted). Nonetheless, the injury must be "actual or imminent, not conjectural or

hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  "The party invoking federal jurisdiction bears the burden of establishing these elements[, and]… each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation," *Lujan*, 504 U.S. at 561 (citations omitted), in this case the summary judgment stage.  If the case proceeds to the final stage, controverted facts pertaining to standing, like any other facts, must be "supported adequately by the evidence adduced at trial."  *Id.*  Standing is required only at the time a complaint is filed: "[i]f Plaintiffs meet the standing requirements at the time the Complaint was filed, standing exists."  *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 735 n. 34 (S.D.N.Y. 2006) (noting that "[w]hether a plaintiff with initial standing still has standing in later stages of the litigation implicates the related doctrine of mootness").

(a.)  Ninety-day Claims

At the time the Complaint was filed plaintiffs Shakhnes, Feldman, and Mock were still awaiting already past-due DAFHs from the State.  Each of these plaintiffs thus had standing to sue the City because they did, or were soon likely to, suffer an injury at its hands—unlawful administrative delay; and that injury was imminent—it was likely to or already had occurred.  Unlawful administrative delays constitute an injury that, given the City's demonstrated systematic delays, the plaintiffs were likely to suffer during the fair hearing resolution process.  Nothing more is needed for purposes of the Constitutional standing requirement.  A similar harm satisfied the injury in fact requirement in *Mayer v. Wing*, 922 F. Supp. 902 (S.D.N.Y. 1996).  The plaintiffs therein were awaiting fair

hearings that they alleged were likely to result in an arbitrary reduction of their home health services.  New York City argued that plaintiffs lacked standing because they had not yet had their services reduced, but the court found that the plaintiffs had standing to bring the action because they "faced the imminent prospect of such a fate."  *Mayer*, 922 F. Supp. at 906 (citing *Cottrell v. Lopeman*, 119 F.R.D. 651, 653 (S.D. Ohio 1987) ("At the time plaintiff initiated this action he was facing a hearing and hearing procedures which he claimed violated his constitutional rights.  This is sufficient to constitute an injury in fact and to provide plaintiff with the requisite standing to initiate this action.")).

The City contends that *Mayer* is inapposite because plaintiffs have already been harmed by delays of greater than ninety days at the state level; therefore, the City contends, additional delay will cause no additional harm.  But the alleged unlawful administrative delay leads to cumulative injury; the injury and the delay grow in tandem as time passes.  So it goes that plaintiffs will be further injured when their cases are passed to City control and unlawful delays occur on that level.  The City defendant incorrectly argues injury should not be expected because plaintiffs "allege no facts to demonstrate that they had a reasonable belief that City defendant would not comply with their specific fair hearing decision once it had been rendered."  (City SJ Rep. 6.)  In fact the plaintiffs have proferred substantial evidence that the City systematically fails to implement fair hearing decisions on a timely basis.  *See infra*, Section V.b.  As a result, plaintiffs have demonstrated that they are likely to suffer delays in the implementation of their fair hearing decisions—a likelihood equal to the proportion of cases in which the City fails to timely implement fair hearing decisions.  Just as the *Mayer* plaintiffs faced the imminent prospect of an arbitrary reduction in services, the plaintiffs here face the

imminent prospect of unlawful delays on the part of the City.  Both cases satisfy the constitutional standing requirement.

(b.) Notice

Defendant contends that no named plaintiff has standing to bring claims against it for inadequate notice since the death of Sha Sha Willis.  Plaintiffs contend that recently intervened plaintiff Mayra Valle has standing to challenge the City's provision of notice. They contend that Ms. Valle received inadequate notice in two respects.  First, they argue that "Ms. Valle did not receive timely notice from the MCO (HIP) that her services would be reduced and then terminated," (Pltfs SJ Opp. 13), and that a notice Ms. Valle later did receive was confusing and inadequate.   Although the City asserts that it owed no obligations to Ms. Valle, her daughter affirms that she received two phone calls from Americare telling her that her mother's services were being reduced as a result of "a visit from someone from the 'City.'" (Conway Decl. Ex. CC, ¶¶ 17, 19.)  She also affirms that afterwards she tried to call the City and received only limited information.  (*Id.* ¶ 20.) Thus the record reflects a question of fact as to the extent of the City's notice obligations to Ms. Valle, and as to whether it met those obligations.  Accordingly summary judgment as to Ms. Valle's individual claim is inappropriate.

(c.) Aid-continuing

City defendant disputes whether Ms. Valle has standing to challenge its aid-continuing practices.  Plaintiff Valle however asserts that she never received aid continuing in the full amount that she had been receiving it prior to the challenged reduction and termination, even though the City was directed to provide aid continuing services (*See* Stevens Decl., Ex. G, Fair Hearing Request Confirmation).  Although the

City blames Ms. Valle's MCO for this failure, the record is not clear as to whether the
City also had aid-continuing obligations to Ms. Valle based on the specific circumstances
of her case.  Accordingly there are genuine issues of fact as to whether Ms. Valle has
standing to challenge the City's aid-continuing practices.

    *2. Due Process*

City defendant seeks summary judgment as to plaintiffs' due process claim on the
grounds that "plaintiffs cannot show that City defendant actually deprived them of [rights
to notice, aid-continuing, and ninety-day resolution of fair hearings] in an irrational,
arbitrary or capricious manner."  (City SJ Mem. 35.)  However, City defendant makes no
argument as to why ninety-day violations would not violate due process, and accordingly
summary judgment is denied as to the ninety-day due process claim.

City defendant argues that the deprivation of Ms. Zhang's aid-continuing was not
the City's fault because Ms. Zhang had particularly high demands as to the kind of aides
she was willing to work with.  Ms. Zhang, of course, contends that her demands were
reasonable.  Whether her demands in fact rose to a sufficient level to relieve the City of
its obligation to provide aid-continuing is just that, a question of fact.  (*See* Stevens Decl.,
Ex. L., Second Zhang Declaration).  Summary judgment for the City on the aid-
continuing due process claim is therefore inappropriate.

With respect to the notice claim, as discussed above there is a question of fact as
to the City's notice obligations to Ms. Valle.  *See supra*, Section V.A.1.b.  Summary
judgment for the City on Ms. Valle's notice due process claim is therefore inappropriate.

*3.  Substantial Compliance*

The City moves for summary judgment on all claims on the grounds that plaintiffs have not demonstrated the City's substantial non-compliance with the statutory mandates. However it raises this argument not to defeat class claims, for which substantial compliance might be a relevant inquiry, but in support of its motion for summary judgment on the individual claims asserted by plaintiffs Valle and Zhang.  However, substantial compliance is no defense to the individual plaintiff's claims.  *See D.D.*, 465 F.3d at 512 ("had a single eligible student brought an action claiming that a systemic failure had deprived him of his right, Defendants could not defeat his claim by establishing that they provide such access to a substantial number of eligible students."). And even assuming *arguendo* that the City has a substantial compliance defense, it has not introduced evidence of its own substantial compliance, it merely points out plaintiffs' failure to prove non-compliance.  Therefore the Court denies City defendant's motion for summary judgment based on Valle and Zhang's alleged failure to prove substantial non-compliance.

**B.  Plaintiff's Motion for Partial Summary Judgment**

Plaintiffs seek summary judgment on behalf of the class on the claim that defendants systematically violate the mandates of 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. 431.244(f) by failing to provide final administrative action in compliance with DAFHs within 90 days of a request for a fair hearing.  The report prepared by plaintiffs' Dr. Faust demonstrates striking noncompliance with the ninety-day requirement on the part of the State agencies, DOH and OTDA, responsible for the resolution of Medicaid fair hearing

48

requests.  Dr. Faust reviewed two data sets provided by defendants, one reporting fair

hearing processing results from 2005-2006, and another set reporting results from 2008.

With respect to the 2005-2006 data, he concluded that "[o]verall compliance (Fair

Hearing request to implementation in 90 days) is achieved in only 2% of cases," that

"fully 91% took more than 150 days," and that the "average number of days for the entire

process was 326."  (Hauser Decl., Ex. D, Faust Rep. ¶¶ 33, 40.).  Examining the

agencies' 60-day/30-day division of time, he found that "3% of State Fair Hearing

decisions were issued within 60 days," and "[c]ity compliance (decision to

implementation in 30 days) is achieved in 16% of Fair Hearings, and in 17% when days

are tolled."  (Id. ¶¶ 35, 37.)  For the 2008 data, which only applied to the State, Dr. Faust

found that "without adjournments or withdrawals [the State] was 60% out of

compliance."

     The State first contends that there is a genuine issue of material fact as to whether

the named plaintiffs suffered actual harm as a result of their unlawful delays.  While this

appears to be a misdirected attack on the adequacy of the named plaintiffs to act as class

representatives under Rule 23(a), it is uncontested that named plaintiffs Shakhnes,

Feldman, Mock and Chang all waited in excess of 90 days for the State to even schedule

their fair hearings.  These delays constitute harm in and of themselves.  The decision of

how to provide for one's health is of enormous importance, but for Medicaid applicants it

must be put on hold pending a determination from the State as to what services will be

provided.  As the applicant awaits that decision they may face medical choices that reach

into all aspects of their lives—whether to move in with family, or out of State, or to sell a

home, or simply whether to purchase pain-easing treatment.  (*See* Hauser Decl., Ex. M,

June 15, 2006 Declaration of Mikhail Feldman (explaining that he has put off needed hernia surgery while awaiting State's decision).)  All of those questions hinge on the services ultimately provided by the State.  An unlawful delay in the determination of those services surely harms applicants.[12,13]

The State also asserts that the fact that the named plaintiffs declined to bring Article 78 proceedings somehow indicates that they did not suffer any harm from the delays.  It does not.  First, filing a lawsuit is a difficult process even when represented by counsel.  Especially in the case of the poor and home-bound the failure to bring suit is not evidence that all is well.  Second, plaintiffs did bring a lawsuit—this action in federal court.  The Court thus finds that the failure to bring Article 78 proceedings is not probative of whether delays harmed the named plaintiffs.

The State also claims that there is a disputed issue of material fact created by alleged inadequacies in plaintiffs' expert report.   Defendants complain that Dr. Faust's statistics excluded appellants objecting to financial eligibility determinations.  Those appellants are no longer part of the class definition, although they once were, and the

---

[12] The case principally relied on by defendants, *Terio v. Johann*, 2006 U.S. Dist. LEXIS 72083 (S.D.N.Y. Sept. 29, 2006) involved a unique and distinguishable circumstance: the *pro se* plaintiff had been formally disqualified from receiving benefits, and his application was "inevitably" going to be denied at the hearing.  As the *Terio* Court explained "the denial of a timely hearing at which his permanent disqualification cannot be reversed does not rise to the level of a remediable injury."  *Id.* at *21.  No such circumstances exist here.

[13] Even if the named plaintiffs were required to show additional harm, they have done so.  (*See* Hauser Decl. Ex. K, Declaration of Alla Shakhnes, dated June 15, 2006 (describing Mr. Shakhnes' medical problems, including severe bedsores); Hauser Decl., Ex. M., Declaration of Mikhail Feldman, dated June 15, 2006 (describing that Mr. Feldman had to delay two surgeries because he did not have the necessary home care in place to ensure safe recovery in his home); Hauser Decl., Ex. L, Declaration of Fei Mock, dated June 15, 2006 (describing Ms. Mock's medical problems, including severe pain and bedsores; Declaration of Jane Greengold Stevens, dated Dec. 10, 2009, Ex. L, Second Declaration of Chiao Zhang, dated Dec. 9, 2009 (describing that Ms. Zhang could not properly eat or perform many basic household tasks during the time she went without needed services)).

State's expert included them when conducting his own report.  Eligibility appellants appear to have their cases resolved more quickly than others: the States' expert's figures, which included those eligibility appellants, found a lower non-compliance rate of 36%.[14]  Of course, even this lower level of non-compliance remains troubling.

State's expert Dr. Hauser also included withdrawn and defaulted cases in compiling his statistics.  100% of these cases were resolved "on time," and so including them in the total compliance calculation further lowers the resultant non-compliance figure, down to around 10-12%.

Not surprisingly, the experts and the parties have different ways of looking at the same data.  This is so even though they are all conducting very simple analyses— counting up cases and the days they took to be resolved.  Dr. Faust finds 60% non-compliance, excluding withdrawn or defaulted cases but including eligibility determinations.  Dr. Hauser finds 36% non-compliance in resolved cases, which drops to 10-12% by including withdrawn and defaulted cases.  Looking at these figures together, a trend emerges: the further back the analyst steps from cases really contesting the amount of help a person needs, the better the State compliance figures look.  The converse is also true, the closer the analysis focuses in on such cases, the worse the figures look.  This reveals an unhealthy situation—the cases where people are contesting what they really need, the cases where a Ms. Mock is lying in bed unattended because the government has not decided whether she needs someone to help her turn over in bed or use the bathroom overnight, those are the cases where the State takes the longest to resolve an appeal.  And

---

[14] When including eligibility cases, State's expert Dr. Heiner finds non-compliance rates of 46%, 29%, 88%, and 64% across four subdivisions of resolved cases.  Hauser Decl., Ex. F., Heiner Report at 4, Lines 1, 4, 7, 10.  By the Court's calculation combining defendants' own figures reveals a noncompliance rate of 36%.

the State takes longer than the statute permits in a significant number of those contested cases—at least 36%, and probably far more.  That is simply not good enough to be considered compliant with the Medicaid statute and its implementing regulations.

Although the State has not specifically addressed the issue, the Court notes an unsettled issue as to what level of non-compliance with the statutory mandate would justify summary judgment against State defendants.  Whether the State is required to achieve total or merely substantial compliance is itself a vexing issue.  *See Dunn v. New York State Department of Labor*, 474 F. Supp. 269 (S.D.N.Y. 1979) (granting summary judgment for administrative delays after analyzing whether facts demonstrated State's reasonable efforts to comply with regulatory deadlines); *Withrow v. Concannon*, 942 F.2d 1385, 1386-1389 (9th Cir. 1991) (rejecting "substantial compliance" defense and requiring State agency to "eliminate[] all but the truly inevitable instances of noncompliance" with Medicaid ninety-day requirement).  However the Court need not now decide whether some level of substantial compliance is sufficient because the State has not asserted substantial compliance as a defense, and because this case is simply not near the border—the noncompliance rate is too high and the State has not attempted to proffer evidence that it is the best feasible rate.  Noncompliance in more than a third of cases is conclusive evidence of unlawful administrative delay, under a substantial compliance standard or otherwise.  *See Morel v. Giuliani*, 927 F. Supp. 622, 637 (S.D.N.Y. 1995) (likelihood of success on the merits demonstrated by "at least 10-12%" noncompliance with Medicaid fair hearing aid-continuing mandate).  *Compare California Alliance of Child and Family Services v. Allenby*, 589 F.3d 1017, 1023 (9th Cir. 2009) (reversing district court and granting summary judgment because "we have difficulty

seeing how payment of approximately 80 percent of the costs of providing the listed items can qualify as substantial compliance.  The federal objective is for those costs to be covered…. 80 percent isn't even close…."); *California State Foster Parent Ass'n v. Wagner*, No. C 07-05086, 2008 WL 4679857, at *7 (N.D.Cal. Oct. 21, 2008) (granting summary judgment and avoiding "vexing question of what precisely 'substantial compliance' entails" because shortfalls of 29% to 40% could nonetheless violate Child Welfare Act);  *Barcia v. Sitkin*, No. 79 Civ. 5831, 2003 WL 21345555, at *6 (S.D.N.Y. 2003) (court unable to find substantial compliance when violation rate 29%), *aff'd in part*, *rev'd in part*, 367 F.3d 87 (2d Cir. 2004) (specifically affirming district court's substantial compliance finding and reliance on 29% statistic); *LaShawn A. v. Kelly*, 887 F.Supp. 297, 305 (D.D.C. 1995) (court unable to find substantial compliance when cancellation rate had increased from 13% to 28%); *with General Elec. Co. v. Jackson*, 595 F.Supp.2d 8, 28 (D.D.C. 2009) (substantial compliance when failure rates of 3.5% and 4.6%); *Shands v. Tull*, 602 F.2d 1156, 1160 (3d Cir. 1979) (holding that 4% error rate constitutes "substantial compliance" with a statute).  Accordingly there is no genuine issue of fact as to whether the State agencies are meeting their ninety-day obligation, and summary judgment is appropriate.

Plaintiffs also seek summary judgment against the City on the ninety-day claims. A § 1983 claim against a municipality such as the City may only be brought "where a policy or custom of the municipality deprived the plaintiff of his constitutional rights." *Purdy v. Town of Greenburgh*, 178 F. Supp. 2d 439, 444 (S.D.N.Y. 2002) (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).  Such a custom may be demonstrated by "a practice so persistent and widespread

that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials." *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 159 (S.D.N.Y. 2006). Plaintiffs contend that since their expert found that the City failed to meet its own 30 day timeline 83% of the time, a policy of non-compliance has been demonstrated. The problem with that analysis is its focus on the 30 day requirement. The federal regulations require compliance within 90 days, and while the agencies have settled on a 30 day window for the City, that requirement is not expressed in the federal law to which the City is accountable before this court. The "duty to comply with federal statutory requirements [is] shared *jointly* by the State and City defendants." *Reynolds v. Giuliani*, 118 F.Supp.2d 352, 385 (S.D.N.Y. 2000) (emphasis added). The Court cannot conclude as a matter of law that City defendants are violating plaintiffs' rights by not meeting the 30 day deadline, since it may be that the City requires more than a one-third share of the 90 days permitted by the regulation for resolution of a fair hearing. By contrast both expert reports revealed the State agencies' noncompliance with the entire ninety-day period. Accordingly, the evidentiary record presently before the Court does not warrant entry of summary judgment against the City. Resolution of these claims should await trial.

## VI.  CONCLUSION

For the foregoing reasons the motions to dismiss in both Shakhnes and Menking are denied as to the 90 day claims.  (06-cv-04778 [84]; 09-cv-04103 [12].)  The State defendants' motion to dismiss in Shakhnes is granted in part: the notice and inadequate supervision claims against State defendants are dismissed without prejudice.

Additionally in the Shakhnes action:

(1)  plaintiffs' motion for class certification [93] is granted and the following class is

certified pursuant to Fed. R. Civ. P. 23(b)(2):

All New York City applicants for, and recipients of, Medicaid-funded home health services, who have requested or will request Fair Hearings challenging adverse actions regarding their home health services, and who are not challenging any decision regarding Medicaid eligibility, and who do not receive final administrative action from Defendants within ninety days of their requests for fair hearings.  "Home health services" include home personal care, long term home health, and certified home health aide services.

(2)  City defendant's motion for summary judgment [86] is denied.

(3)  Plaintiff's motion for partial summary judgment [88] is granted as against the

State defendants and denied as against the City.  In lieu of entering an order

providing for specific injunctive and remedial relief, the Court directs the parties

to submit, within twenty (20) days of the filing of this opinion, letter briefs

addressing (a) the appropriate injunctive, declaratory and remedial measures

consistent with this opinion, and (b) whether an evidentiary hearing is needed to resolve factual issues related to (a).

SO ORDERED.

Dated: New York, New York
       September 30, 2010

_____
Richard J. Holwell
United States District Judge